## SHEA v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit.   August 3, 1918.)

### No. 3078.

1. JUDGES ⊝⇒51(2)—DISQUALIFICATION—TIME OF OBJECTION.
   Affidavit of disqualification of judge, required by Judicial Code, § 21 (Comp. St. 1916, § 988), before term, unless good cause is shown, being tendered on the eve of second trial, six weeks after mandate of appellate court went down, was too late; the only excuse being that mandate was not filed in trial court till after term began.

2. CRIMINAL LAW ⊝⇒1166½(1)—HARMLESS ERROR—PRACTICE.
   Though it would have been better practice to have permitted filing of affidavit of prejudice of judge, and then strike it, refusing to permit it to be filed was not prejudicial.

3. CRIMINAL LAW ⊝⇒1151—REVIEW—DISCRETION—DENIAL OF POSTPONEMENT.
   Denial of postponement to enable counsel to prepare for second trial held not reviewable, it not clearly involving an abuse of discretion; it being impossible to say under the facts that counsel did not have sufficient time.

4. CRIMINAL LAW ⊝⇒1043(2)—REVIEW—OBJECTION TO EVIDENCE—STATEMENT OF GROUNDS.
   A mere "I object" to questions, without stating ground of objection, did not necessarily suggest impropriety of cross-examination as to indictments or arrests, as distinguished from convictions, so as to allow review.

5. CRIMINAL LAW ⊝⇒822(16)—INSTRUCTIONS—REASONABLE DOUBT.
   Considering in its entirety charge on reasonable doubt, held, that jury could not have been misled into construing it as meaning that merely because 12 minds agree that constitutes conviction beyond a reasonable doubt.

6. CRIMINAL LAW ⊝⇒822(6)—USING MAILS TO DEFRAUD—INSTRUCTION.
   Considering all parts of charge on conspiracy, on prosecution for conspiracy to use the mails in furtherance of a scheme to defraud, held, it was not open to the interpretation that defendant would be guilty, if all he did was to assist in the defrauding, or to share in the proceeds.

7. CONSPIRACY ⊝⇒47—USING MAILS TO DEFRAUD—PRESENCE AT DEFRAUDING.
   That defendant was not present at the time of the defrauding is not conclusive on prosecution for conspiracy to use the mails in furtherance of scheme to defraud.

8. CONSPIRACY ⊝⇒32—USING MAILS TO DEFRAUD—INTENDED VICTIM.
   For conviction of conspiracy to use the mails in furtherance of a scheme to defraud, it is not necessary that the person defrauded had been, in the formation of the original conspiracy, selected as its victim.

9. CRIMINAL LAW ⊝⇒775(6)—INSTRUCTIONS—ALIBI.
   Charge on alibi, on prosecution for conspiracy to use the mails in furtherance of a scheme to defraud, held not open to criticism of belittling and disparaging, as matter of law, the defense of alibi.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

John J. Shea was convicted of conspiracy to use the mails in furtherance of a scheme to defraud, and brings error. Affirmed.

Cornell Schrieber, of Toledo, Ohio, for plaintiff in error.

E. S. Wertz, U. S. Atty., and J. C. Breitenstein, Asst. U. S. Atty., both of Cleveland, Ohio.

⊝⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN and DENISON, Circuit Judges, and WEST-ENHAVER, District Judge.

KNAPPEN, Circuit Judge. This proceeding is brought to review a second conviction of plaintiff in error upon an indictment under section 37 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. 1916, § 10201]), for conspiracy to use the mails in furtherance of a scheme to defraud condemned by section 215 of the Code (section 10385). A former conviction of plaintiff in error and others upon the same indictment was reviewed by us in Shea v. United States, 236 Fed. 97, 149 C. C. A. 307, where the fraudulent scheme charged and the salient facts appearing on the trial are set out. It is enough at this time to say that the fraud alleged to have been accomplished is the swindling of one Rundel out of $3,000 by fake horse race betting at a fictitious "turf exchange" in Toledo, Ohio.

The case is a companion of No. 3079, 251 Fed. 440, —— C. C. A. ——, this day decided, in which Shea and Taylor are plaintiffs in error, and which involves the defrauding of one Hoblitzel out of $5,000, by similar methods; the Hoblitzel case figuring in the evidence on the trial of the instant case. On this review six alleged errors are urged:

[1, 2] 1. Section 21 of the Judicial Code. (Act March 3, 1911, c. 231, 36 Stat. 1090 [U. S. Comp. Stat. 1916, §. 988]) provides that when a party to a civil or criminal cause shall file affidavit that the judge before whom the case is to be tried has a personal bias or prejudice either against him, or in favor of his adversary, the judge shall proceed no further, and another judge shall be designated to hear the case. The affidavit must be filed at least 10 days before the commencement of the term (unless some good cause is shown for failure so to do), and must be accompanied by certificate of counsel of record of the good faith of the affidavit and application. The opinion of this court on the former review was handed down October 13, 1916. The mandate was received below November 18th following. The then current term of the District Court began October 31st, and in due course the case was assigned for trial December 4th following, or as soon thereafter as it could be taken up. On the date last named, on application of plaintiff in error that the trial be passed for a few weeks, the case was specially set for trial on Monday, January 8, 1917. On Saturday, January 6th, when the jurors were under notice, and witnesses for the government at distant places in Ohio and adjoining states had been subpœnaed to attend on the following Monday, an affidavit of plaintiff in error, verified on information and belief, but containing formally sufficient averments of the judge's disqualification, was tendered for filing and the tender refused. The certificate of counsel was made by an attorney who had not theretofore appeared in the case. The only reason given for failing to file the affidavit sooner was that the mandate of this court was not filed in the District Court until after the current term had begun.

Upon this state of facts the court rightly refused to consider the application. Technically, the application came too late. Assuming,

however, for the purposes of this case, that it could not have been filed before the mandate went down, it clearly could and should have been filed at the nearest available time thereafter. The delay in filing after the mandate issued was in no way explained or accounted for. There is no claim of ignorance of the actual filing of the mandate, or of the announcement of this court's decision more than a month previously. Counsel's appearance had not been entered at the time the affidavit was tendered for filing. Appearance was entered later in the day, but was withdrawn still later in the same day, but after the denial of leave to file affidavit. We do not pass upon the sufficiency of the certificate, nor (though intimating no opinion to the contrary) whether the affidavit in question, made, as it was, on information and belief, was technically sufficient under the statute. We rest our affirmance of the action of the District Judge upon the ground that the affidavit of disqualification was not tendered in due season, and that the circumstances were such as to justify belief that the affidavit was purposely held back, and its use on the eve of trial resorted to for the purpose of securing a postponement. The better practice would have been to permit the affidavit to be filed, and then strike it from the file, thus preserving a more complete record. But no prejudice resulted from the specific practice followed.

[3] 2. On the following Monday (January 8th), which was the date set for trial, and when the government was ready therefor, a postponement was asked to enable counsel for plaintiff in error to prepare for trial. The application was denied. The denial is not reviewable, unless it clearly involves an abuse of discretion, which we think it does not. True, counsel who had represented plaintiff in error, on the review in this court of the former trial, had given up their employment January 3d, and the attorney afterwards employed, and who presented the affidavit of disqualification on January 6th, gave up his employment that day, apparently because he concluded that he was not expected to actively represent plaintiff in error on the trial. A New York attorney was expected to attend on behalf of plaintiff in error, although he seems not to have been expected to take an active part in the trial itself. Counsel who made the application to postpone, and who actively tried the case, had been retained on the evening of the previous day.

The meritorious question was whether, under all the circumstances, counsel was given reasonable time to prepare. The opinion of this court on the former review contained a fairly full statement of the history and salient facts of the case. The transcript of the record of the former trial (less than 300 pages) was printed, and the New York attorney had had a copy since November 18th. Plaintiff in error was very familiar with the case and seems to be highly intelligent. Although the jury was impaneled on Monday afternoon, it was not expected that the taking of testimony would begin until Tuesday, and it so turned out. Under all the circumstances, we cannot say that counsel could not be as well prepared to take up the trial on Tuesday as they would be after several weeks' preparation in advance of a first trial. Certainly the record does not indicate prejudice from lack of preparation.

[4] 3. Plaintiff in error took the witness stand. On cross-examination the government's counsel was permitted to ask him if he had been charged with fraud or crime in Philadelphia, if he was not at present under indictment in New York, whether he had not been indicted in Boston for clairvoyant frauds, and whether he was arrested in Detroit as a clairvoyant. The ground of complaint stated here is that plaintiff in error was not subject to cross-examination as to previous indictments or arrests, as distinguished from convictions. His answers to the criticized questions, to say the least, largely relieved from prejudice. Sawyer v. United States, 202 U. S. 150, 166, 167, 26 Sup. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269; People v. Ogle, 104 N. Y. 511, 11 N. E. 53; Shears v. State, 147 Ind. 155, 46 N. E. 331. As to the Philadelphia charge, he denied knowledge of its nature, declared he was never identified as the party, and that it had been dismissed as against him; as to the New York charge, that he had been in New York considerably "since then, and they have never made any effort to arrest me"; as to the Boston charge, that he "returned there, surrendered, and it was dismissed"; as to the Detroit charge (in apparent substance), that he was not arrested, because found not to be the man wanted. Indeed, on the former trial, as appears by the record on review, the subject of the indictments in Philadelphia, Boston, and New York was introduced by plaintiff in error on his direct examination.

But we are not called upon to consider whether the criticized questions were proper, for the sufficient reason that the ground of the objection was in no case stated, and the objections were thus fatally defective and not entitled to be considered. We need only refer to our own decisions.[1] A mere "I object" did not necessarily suggest the impropriety of cross-examination as to indictments or arrests, as distinguished from convictions. It was broad enough to include an alleged incompetency of the proof as not the best evidence,[2] which is not in all jurisdictions a good objection,[3] or that the cross-examination was unreasonable or oppressive, which would be largely addressed to the court's sound judicial discretion. Complaint is made of other questions allowed on cross-examination; but, in view of what we have already said, we think the complaint without merit.

[5] 4. In the course of the charge, after an instruction that the presumption of innocence "must result in your bringing in a verdict of not guilty," unless "the evidence convinces you of the truth of the charge beyond a reasonable doubt," the court said, in substance, upon the subject of reasonable doubt, that if the individual juror, after considering all the facts and circumstances in evidence, putting them together in a logical order, giving to each of them that force and effect

---

[1] Pennsylvania Co. v. Whitney, 169 Fed. 572, 575, 95 C. C. A. 70; Robinson v. Van Hooser, 196 Fed. 620, 624, 116 C. C. A. 294; Tucker v. United States, 224 Fed. 833, 840, 140 C. C. A. 279.

[2] Unless in one instance where a copy of an indictment seems to have been at hand.

[3] Clemens v. Conrad, 19 Mich. 170; People v. Hoffman, 154 Mich. 145, 117 N. W. 568; Lang v. United States (C. C. A. 7) 133 Fed. 201, 204, 205, 66 C. C. A. 255.

which it should have as part of the chain of circumstances, trying to get at the actual facts without passion or prejudice of any kind, then submitting his judgment to the test of "the judgment of the other men on the jury, * * * still holds a doubt of the defendant's guilt, he is entitled to say that he is entertaining a reasonable doubt, and he ought to hold to it to the production of a verdict of acquittal, or at least to prevent a verdict of guilty." Immediately following the words last quoted, language was used which we quote in the margin.[4] The portions we have italicized (together with the words used in a later paragraph, "You act in short as a deliberative body") are criticized as erroneous, the argument being that "a deliberative body is usually governed by the majority," and, inferentially, that the charge means that "merely because twelve minds agree that that constitutes conviction beyond a reasonable doubt." If the language complained of was all that was said upon the subject of reasonable doubt, it would be subject to criticism; but the language quoted, besides being preceded by what has already been referred to, was followed soon afterwards by the further instruction, not only that if "you all agree that there is a reasonable doubt of the defendant's guilt you ought to bring in a verdict of not guilty," but that:

"The defendant cannot be convicted upon merely the belief of the jury that he is probably guilty. If you do not get any further than that, you ought to bring in a verdict of acquittal. But if these facts convince *each one of you* beyond a reasonable doubt, then there is no recourse to you, as honorable men, but to bring in a verdict of guilty."

Considering the charge upon the subject of reasonable doubt in its entirety, we think the jury could not have been misled into the construction put upon it by counsel, and that it was not erroneous. Allen v. United States, 164 U. S. 492, 501, 502, 17 Sup. Ct. 154, 41 L. Ed. 528.

[6-8] 5. Upon the subject of conspiracy the jury was instructed that:

The "government is not limited, in a case of this kind, to proof that all the men named in the conspiracy and in the charge were in the scheme from the beginning."

There was substantial, though not conclusive, evidence tending to establish that plaintiff in error was the one who gave to the Detroit newspaper in August, 1914, the advertisement quoted in our opinion

---

4 "*But that juror should remember always that this case is not submitted to him for his individual judgment.* It is submitted to the judgment of twelve men. In human affairs you and I observe that it is very seldom that absolute certainty can be attained in anything. Reasonable certainty is the best we can reach. We are all liable to make mistakes. We are all liable to the infirmities of judgment. *But for centuries it has been the policy of Anglo-Saxon and Teutonic law, derived from our forefathers centuries ago in Germany, carried over to England, so that it is the principle wherever the Teutonic and Anglo-Saxon blood runs, that the coming together of the minds of twelve impartial, fair-minded, intelligent, honest men upon one proposition, each man surrendering his individual judgment to the scrutiny and criticism of every other man, that when twelve men unite upon the same result on the appeal of facts to their minds, that that judgment is so near accurate, so near to absolute certainty, that it may be said to be free from any reasonable doubt.*"

in the companion case, No. 3079, before referred to. Immediately following the language we have just quoted was an instruction which we print in the margin,[5] regarding the part played by that advertisement in connection with the use of the mails charged. There was found in Shea's office at the time of his arrest a large amount of paraphernalia identified as that used in the alleged fictitious "turf exchange" in which the government claimed Rundel was swindled. In this connection the court used the further language which we have also printed in the margin.[6] Later, after stating the necessity that the government prove beyond a reasonable doubt that one of the persons charged in the indictment with the conspiracy put the advertisement across the counter in Detroit, but that it was not necessary that the government should prove that that person was plaintiff in error, and after stating that there was evidence tending to establish Shea's identification, and, on the contrary, evidence tending to show that that was a case of "mistaken identity," a further instruction, which we also print in the margin, was given.[7] This later language, in connection with the first marginal quotation in this subdivision, is construed as meaning that:

"Even though the witness should fail to identify Shea as the man who had placed the ad in Detroit, or in the paper, yet Shea would be guilty if all that he did was to assist in defrauding Rundel, or if all that he did was to participate in the result; that is, share in the money of which he was defrauded."

The charge, considering all its parts, is plainly not susceptible of such interpretation, and it clearly states the applicable law. The fact

[5] "Two men may promote a conspiracy to do a thing, violate a law, and after they have got it formed and started and running, anybody who comes in afterwards and gets into the game and helps it, takes part in it, becomes thereby guilty from the beginning as a conspirator. Now, this conspiracy must have an unlawful purpose. The unlawful purpose charged in this indictment is that the mails were to be used to promote a scheme to defraud. The government proves that purpose, attempts to prove that purpose rather, by showing the fact, which is not disputed in this case, that an advertisement was put in the Detroit News, which in its terms, and you are justified in reaching that conclusion yourselves, invited correspondence by mail, and the government establishes, and there is no one here who says otherwise, that he who put that advertisement in the Detroit News did it with the expectation that the mails would be used thereby as a result of its invitation, and that that fact, as the testimony in this case developed, was productive of its victim, Mr. Rundel; the government insists that that fact shows that part of this conspiracy was the unlawful purpose to use the mails."

[6] "And if you find beyond a reasonable doubt that they are the paraphernalia of a swindling scheme of the nature charged in this indictment, and if you find beyond a reasonable doubt that part of that scheme was to violate the mails in the execution of which this overt act at Detroit was perpetrated, then the finding of these articles in Mr. Shea's possession becomes a matter of sufficient substance in this case as to demand some sort of explanation, because unexplained possession indicates domination, ownership."

[7] "If you find that there was a case of mistaken identity, and that was somebody else, and that that somebody else was still one of these men named in this indictment, Collins, or Collier, or somebody else, the fact that you leave Shea out is not conclusive of your duty in this case, if you find there are left in the case other facts which convince you beyond a reasonable doubt that Shea was interested in this conspiracy and participated in some form or other, either in the result of the conspiracy, or in its execution in some step or other, by evidence which convinces you beyond a reasonable doubt."

that Shea was not shown to have been present in the "exchange" at the time Rundel was defrauded is not conclusive. The court properly instructed that under the charge of conspiracy it was not necessary that the government prove that Rundel had been, in the formation of the original conspiracy, selected as its victim.

[9] 6. Plaintiff in error presented testimony tending to show an alibi as respects both the placing of the Detroit advertisement and personal participation in the swindling transactions in issue. The charge upon the subject of alibi is criticized as belittling and disparaging, "not as matter of comment, but as a matter of law, the plain and conclusive alibi, which the defendant had proved." The more prominent grounds of this criticism are the reference to a "so-called alibi," the statement that "in a conspiracy case an alibi performs a very different and much smaller, much less important, function than in a charge of direct crime," and the italicized words contained in a long paragraph which we print in the margin.[8]

It is enough to say that in our opinion the charge not only is not subject to the criticism stated, but, on the contrary, was, taken in its entirety, unusually helpful in the way of calling the jury's attention to the application of the defendant's alibi to the particular situation presented to the jury. See, also, Young v. United States, 249 Fed. 935, —— C. C. A. ——, and the reference thereto in the companion case of Shea and Taylor v. United States, No. 3079.

Finding no reversible error in the record, the judgment of the District Court is affirmed.

---

8 "Now, you cannot find that Shea was in Detroit, and thereby charge him with that particular transaction in the furtherance of this conspiracy, unless the evidence convinces you of that fact beyond a reasonable doubt. You cannot find that Shea directly participated with Rundel and thereby carried the burden of that transaction, unless you find that fact beyond a reasonable doubt. And, as in every alibi transaction, all Shea needs to do is to bring in evidence against those two particular incidents charged against him that deprive you of the judgment that Hoblitzel was right in the one instance and Gorton and Remington right in the other, beyond a reasonable doubt. Shea is not called upon to prove actually that he was not in Detroit, that he was elsewhere, or to prove by a preponderance of evidence that he was not present when Hoblitzel parted with his money; all he needs to do is to introduce evidence enough to establish in your minds a reasonable doubt as to whether those matters were true. *But as I have said, that is the extent of the force of alibi testimony in this case; it simply goes to the credibility of a certain line of testimony.* It is not an absolute defense if there remains in this case other incidents, transactions and facts which you accept as established beyond a reasonable doubt, and which in your judgment connect the defendant with this swindling transaction and the element in the transaction which involved the fraudulent use of the mails."