UNITED STATES of America,
Plaintiff-Appellee,

v.

James R. HOFFA, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Ewing PARKS, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry CAMPBELL, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ewing KING, Defendant-Appellant.

Nos. 16991–16994.

United States Court of Appeals
Sixth Circuit.

Sept. 14, 1967.

B. J. Mellman, St. Louis, Mo., for appellants, James E. Haggerty, Sr., Detroit, Mich., (for James R. Hoffa), Jacques M. Schiffer, Long Island, N. Y., (for Thomas Ewing Parks), Cecil D. Branstetter, Nashville, Tenn. (for Larry Campbell), Harold E. Brown, Chattanooga, Tenn. (for Ewing King), on brief, Daniel B. Maher, Washington, D. C., Morris A. Shenker, St. Louis, Mo., of counsel.

Nathan Lewin, Office of the Solicitor General Washington, D. C., for appellee, Fred M. Vinson, Jr., Asst. Atty. Gen., Robert S. Erdahl, Charles N. Shaffer, Jr., Theodore George Gilinsky, Attys.,

Dept. of Justice, Criminal Division, Washington, D. C., John H. Reddy, U. S. Atty., Chattanooga, Tenn., on brief.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

These appeals are from an order of the District Court denying Appellants' third motion for a new trial. Like the second one, it was also based on alleged newly discovered evidence. The alleged newly discovered evidence does not relate to the guilt or innocence of Appellants. The motion was not filed until nearly eighteen months after their conviction and one month after we had affirmed. United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965), aff'd 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), rehearing denied February 27, 1967, 386 U.S. 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967).[1]

The third motion alleged misconduct on the part of jurors and United States Marshals who were attending them during their sequestration. In this respect the third motion was similar to the first one, although the allegations of misconduct were embellished to a much greater extent.

After filing the third motion in the District Court, Appellant Hoffa sought to disqualify from hearing the motion the Judge who had presided over his trial which had lasted for nearly two months. He filed an affidavit under Title 28 U.S.C. Section 144, alleging personal bias and prejudice. The Judge ruled that the affidavit was untimely and legally insufficient and ordered it stricken. Hoffa then filed a motion to disqualify him under Title 28 U.S.C. Section 455, which the Judge considered and denied. The other Appellants adopted Hoffa's third motion for a new trial and his affidavit of bias and prejudice and motion to dis-

qualify. We will consider first the affidavit of bias and prejudice and the motion to disqualify.

Affidavit of Personal Bias and Prejudice Under Section 144

The only factual support for this affidavit was furnished by the affidavit of a prostitute named Marie Monday, who stated that on two different occasions, "Some time late in January, 1964, or the early part of February, 1964, during the course of the trial of the Hoffa case," she met the presiding Judge at the hotel where the jury was sequestered, and that on the first occasion the Judge told her that he was in charge of the "Hoffa" trial and that "Hoffa was going to get what was coming to him this time and that he was going to see to it that he did." On the second occasion the Judge is alleged to have told her, "Don't you worry, he [Hoffa] is going to be convicted" because he [the Judge] was "in charge of it."

The Judge in a written opinion held that the affidavit was insufficient on its face; that it was not timely filed; that it did not comply with the statutory requirement of a certificate of counsel; and that it was not authorized by the statute since it was the second such affidavit filed in the case, the statute permitting the filing of only one affidavit.

After passing upon the sufficiency of the affidavit of bias and prejudice, the Judge then categorically denied that he had ever made the statements set forth in the prostitute's affidavit, to anyone, including her. He denied that he had ever met her or had a conversation with her, and denied that he was in the hotel where the jury was sequestered, or even in the vicinity of it, at any time during the trial, and stated that he had purposely stayed away from the hotel. He denied that he held any bias or prejudice against any of the Appellants. He point-

[1]. On February 20, 1967 the Supreme Court denied Appellants' motion to vacate judgment, which alleged violation of their constitutional rights by the use of electronic devices. 386 U.S. 940, 87 S. Ct. 970. 17 L.Ed.2d 880.

There is also pending in this Court an appeal from an order of the District Court denying Appellants' fourth motion for a new trial on newly discovery evidence containing similar allegations.

ed out that he had directed a verdict of acquittal for defendant Hoffa on one of the counts of the indictment. The jury had also acquitted defendants Hoffa, Dorfman and Tweel on Count IV of the indictment. The Judge stated that the prostitute's affidavit "is a complete and total fabrication and fraud" and that he would not "be deterred by such patent perjury from doing his duty * * *. Each defendant will continue to receive every right accorded to him under the law."

There can be no question but that the Court was required to pass upon the sufficiency of the affidavit of bias and prejudice. Berger v. United States, 255 U.S. 22, 32, 41 S.Ct. 230, 65 L.Ed. 481 (1920); Refior v. Lansing Drop Forge Co., 124 F.2d 440, 444 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746 (1942); Shea v. United States, 251 F. 433 (6th Cir. 1918), cert. denied 248 U.S. 581, 39 S.Ct. 132, 63 L. Ed. 431 (1918). The statute does not permit the Court to inquire into the truth of the facts alleged in the affidavit.

The Judge ought not to be precluded from answering the attack upon him which contained innuendoes concerning his conversations with a prostitute and made a mockery of the administration of justice in a United States Court.

Understandably, he did not want the scandalous allegations concerning him to remain unchallenged in the record. See Cole v. Loew's Inc., 76 F.Supp. 872, 877–878 (S.D.Cal.1948). His answer did not exhibit bias or prejudice. In any event, his answer did not affect the validity of his ruling that the affidavit was legally insufficient.

The statute would seem to require affidavits of personal bias and prejudice to "be based upon facts antedating the trial, not those occurring during the trial," Berger v. United States, supra, 255 U.S. page 34, 41 S.Ct. page 233; Ex parte American Steel Barrel Co., 230 U. S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913). Bias and prejudice occurring during the trial can be corrected on re-

view by the Court of Appeals, Knapp v. Kinsey, 232 F.2d 458 (6th Cir. 1956), cert. denied 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956). See also Taylor v. United States, 179 F.2d 640 (9th Cir. 1950) (affidavit not filed until defendant moved to vacate sentence, untimely); Ex parte Glasgow, 195 F. 780 (N.D.Ga. 1912), aff'd sub nom. Glasgow v. Moyer, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147 (affidavit not filed until after motion in arrest of judgment and new trial, untimely). Nor was the statute

"* * * intended to paralyze the action of a judge who heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard. * * *"

Ex parte American Steel Barrel Co., supra, 230 U.S. at page 44, 33 S.Ct. at page 1010.

But Appellants have additional hurdles to overcome. The statute required the filing of "a timely and sufficient affidavit," Refior v. Lansing Drop Forge Co., supra. It further provided that the affidavit "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."

In his affidavit for disqualification, defendant Hoffa stated that he first learned of these matters on August 23, 1965, and could not have learned of them any sooner through the exercise of due diligence. This does not explain why it took nearly eighteen months to learn about events alleged to have taken place during the trial. The affidavit does not state what diligence, if any, was exercised to discover this information nor why it could not have been discovered sooner.

But it appeared from the first motion for a new trial filed on March 10, 1964, and the affidavits filed in support thereof, that Appellants alleged misconduct of Marshals and jurors; that the Marshals furnished large quantities of intoxicating liquors to the jurors and en-

tertained them; and that Ezell Ervons, one of the porters at the hotel, arranged for a girl to visit a Marshal. A bellboy named Culpepper signed an affidavit that he saw a lot of drinking going on on the tenth floor where the jurors were staying and that he saw some of the jurors standing around with drinks in their hands. Another bellboy named Ball mentioned drinking on the floor of the hotel where the jurors were staying.

In support of the third motion for a new trial, Appellants procured another affidavit from this same bellboy, Culpepper, which stated that during the trial on several occasions he called a girl named Marie and a girl named Bobbie, to come to the hotel, and that after each visit the girl would give him a tip. Marie is the prostitute Monday's given name.

Monday, in another affidavit which was filed in support of the third motion for a new trial, stated that she went to the hotel on numerous occasions during the trial and that on some of these occasions she saw Culpepper, Ball and Ervons.

■ Since Appellants knew of the bellboys and the porter in March, 1964, and had obtained affidavits from some of them relating to misconduct of Marshals and jurors, it would seem to us that the more scandalous material now alleged was then available and could have been obtained from the same bellboys and porter. Under these circumstances, we do not believe that the failure of the District Court to infer diligence was wrong, and in our judgment "good cause" for the delay was not established.

On its face, the affidavit of the prostitute Monday is vague and equivocal and leaves much to inference and conjecture. She does not state how or under what circumstances she happened to meet the Judge, nor the place in the hotel where the meeting is alleged to have taken place, nor who introduced her. She is hazy as to the time. Although she claims she met the judge, she qualifies her identification by stating that she knows he is the same person whom she saw on television and whose picture she had seen in a newspaper. One would certainly have to be most credulous to believe that a United States Judge, presiding over a criminal trial, would go to a hotel where the jury was sequestered, meet a prostitute under unexplained circumstances, and confide in her his feelings of bias and prejudice against one of the defendants. The District Judge, however, was precluded, as we are, from making inquiry into the truthfulness of the statements alleged in the affidavit. Berger v. United States, supra.

There are other defects in the affidavit. The statutory requirement as to a certificate of good faith of counsel was not complied with. The only counsel of record for defendant Hoffa, who was admitted to the bar of the Court, had withdrawn from the case and did not sign the certificate. The signature of James E. Haggerty, Sr., a Michigan lawyer who had not been admitted to the bar of the Court, appears thereon. Haggerty, by telegram, had authorized a Washington, D.C. lawyer, who was not an attorney of record or admitted to the bar of the Court, to affix his signature on all papers and documents in connection with the case. Harold E. Brown, who was attorney of record for Appellant King, requested that his name be entered as local counsel for Mr. Hoffa on the date the third motion for a new trial was filed, and he signed the certificate. He had been duly admitted to the bar of the District Court.

■ The certificate must be signed by an attorney who is a member of the bar of the Court. Currin v. Nourse, 74 F.2d 273 (8th Cir. 1934), cert. denied 294 U. S. 729, 55 S.Ct. 638, 79 L.Ed. 1259 (1935). The purpose is to shield a court which cannot test the truth of the facts alleged in the affidavit. The statute is not satisfied by having another lawyer, who did not represent the defendant during the trial, execute the certificate.

The statute further provided:

"A party may file only one such affidavit in any case."

The affidavit involved here was the second such affidavit filed in this case by Appellant Hoffa. The first affidavit was filed against District Judge Frank Gray, Jr., who, after ruling that the affidavit was insufficient, voluntarily and contemporaneously recused himself.

■ It is contended that the statutory limitation of one affidavit should be construed so as to apply only to a case where the Judge rules that the affidavit is sufficient and he is disqualified thereby. But this is not what the statute says, and its language is clear and plain.

Here the affidavit of bias and prejudice filed against Judge Gray, although insufficient, accomplished its purpose, namely it got rid of the judge who was scheduled to hear the case, and secured another judge against whom appellants could and later did file a second affidavit of bias and prejudice after the case had been decided and reviewed by this Court.

The statute does not provide a remedy similar to habeas corpus or Title 28 Section 2255 proceedings, where successive petitions may be filed. In plain and unequivocal language the statute permits only one affidavit of bias and prejudice to be filed by a party in a case. Martin v. Texas Indem. Ins. Co., 214 F.Supp. 477 (N.D.Tex.1962), cert. denied 377 U.S. 971, 84 S.Ct. 1652, 12 L.Ed.2d 740 (1964).

■ The District Judge did not err in refusing to recuse himself. Since the affidavit alleged personal bias and prejudice only with respect to the defendant Hoffa, the other appellants have no standing to question the ruling.

### Motion to Disqualify Under Section 455

The basis for this motion is that the District Judge, by answering the attack upon himself, in some manner became a material witness in the case and therefore was disqualified under Section 455 from passing upon the motion for a new trial.

■ The fact that the judge ruled adversely to Appellants on their Section 144 affidavit of bias and prejudice, provided no ground for the disqualification of him under Section 455. Appellants were granted a review of the Judge's ruling on their Section 144 affidavit, which we have found to be correct. No hearing was held in the District Court on the Section 144 affidavit as it was disposed of entirely on the basis of its insufficiency. Nor do we believe that an oral hearing was required on the third motion for a new trial, as we will point out later.

The Judge did not have a substantial interest (pecuniary) in the case, nor was he a material witness. See United States v. Smith, 337 F.2d 49 (4th Cir. 1964), cert. denied 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965). There is an obligation upon a Judge not to recuse himself when there is no occasion. In Re Union Leader Corp., 292 F.2d 381 (1st Cir. 1961).

### The Third Motion For A New Trial

The misconduct alleged against the jurors and Marshals was that during the course of the trial, while the jurors were sequestered in a hotel, the Marshals furnished intoxicating beverages and other favors to them, and that they imbibed to excess and discussed the case among themselves and others, in violation of the Court's instructions, and made statements concerning the guilt of Appellants, and exhibited bias and prejudice against Appellants. It was alleged that two of the jurors, prior to the trial, had expressed opinions to fellow employees as to Mr. Hoffa's guilt and had made statements indicating bias and prejudice against him and also against labor unions.

It was further alleged that the Marshals furnished prostitutes to seven of the jurors and that the jurors had intercourse with the prostitutes in their hotel rooms. It was alleged that the Marshals paid the prostitutes twenty dollars for each service, and had made remarks prejudicial to Appellants in the presence of the jurors. The purport of the motion was that the Marshals and jurors

were engaged in the evenings at the hotel in wild, drunken orgies and parties with prostitutes and that at least seven of the jurors were immoral and biased presons unfit to serve as jurors.

The motion was accompanied by affidavits of four prostitutes, two bellboys who claimed to have acted as procurers, and six men who worked at the same plant as two of the jurors. Other affidavits were filed which relate to the time and circumstances under which the affidavits of the bellboys, prostitutes and fellow employees had been procured.

The Government filed counter-affidavits of all of the jurors and alternates (except one, who was critically ill) and of the Marshal and Deputy Marshals who assisted in the care and custody of the jury during the trial.

Each juror and alternate juror categorically denied that a Marshal had furnished him with intoxicating beverages or other favors; denied that a Marshal had furnished him with a prostitute; denied that he had intercourse with a prostitute; denied that he had discussed the case or made statements concerning the guilt of the Appellants or indicating bias or prejudice. Some of the jurors did admit taking a drink before the evening meal, but denied drinking to excess, and stated that they paid for their own drinks. All of the Marshals denied the charges of misconduct alleged in the affidavits.

The District Judge, in a comprehensive opinion, D.C., 268 F.Supp. 732, held that the motion on its face was legally insufficient because many of the acts of misconduct now claimed to be newly discovered, were asserted in the original motion for a new trial and there is no showing of any facts upon which diligence might be inferred.

■ Motions for a new trial on newly discovered evidence are not favored and should be granted only with great caution. United States v. Costello, 255 F. 2d 876 (2nd Cir. 1958), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958); Weiss v. United States, 122 F.

2d 675 (5th Cir. 1941), cert. denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941); United States v. West, 170 F. Supp. 200 (N.D.Ohio, 1959), aff'd 274 F.2d 885 (6th Cir. 1960), cert. denied sub nom. Haug v. United States, 365 U.S. 811, 81 S.Ct. 688, 5 L.Ed.2d 691 (1961).

■ We have repeatedly held that the granting or refusing to grant such motions rests within the sound discretion of the District Court and its action must stand in the absence of a clear showing of abuse of discretion. United States v. Crowder, 351 F.2d 101 (6th Cir. 1965); United States v. Lewis, 338 F.2d 137 (6th Cir. 1964), cert. denied 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965); United States v. Barnhill, 305 F.2d 164 (6th Cir. 1962), cert. denied 371 U.S. 865, 83 S.Ct. 126, 9 L.Ed.2d 102 (1962); Ashe v. United States, 288 F.2d 725 (6th Cir. 1961); Stern v. United States, 260 F.2d 365 (6th Cir. 1958); Winer v. United States, 228 F.2d 944 (6th Cir. 1956), cert. denied 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956); Sharp v. United States, 195 F.2d 997 (6th Cir. 1952).

■ In order to be entitled to a new trial on newly discovered evidence, it was incumbent on Appellants to establish that the evidence was newly discovered since the trial and facts must be alleged which infer diligence on the part of the mover. United States v. West, supra, 170 F.Supp. at page 208; Wion v. United States, 337 F.2d 230 (10th Cir. 1964); Ferina v. United States, 302 F.2d 95 (8th Cir. 1962), cert. denied sub nom. Cardarella v. United States, 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 59 (1962); Gallegos v. United States, 295 F.2d 879 (9th Cir. 1961), cert. denied 368 U.S. 988, 82 S. Ct. 604, 7 L.Ed.2d 526 (1962).

We agree with the District Court that many of the alleged acts of misconduct now relied on were not "newly discovered at all, but were alleged in support of the original motion for a new trial. These included the charges with respect to the Marshals' supplying jurors with intoxicating beverages, and drink-

ing with and entertaining the jurors; that the jurors mingled with other people and considered matters not introduced in evidence; that jurors were discussing Hoffa, in the hallway; that a porter got a girl for a Marshal and let them use a room. These charges were all denied in counter-affidavits. The District Judge gave careful consideration to the charges in ruling on the original motion for a new trial. In so doing he took into account the appearance and demeanor of the jurors as he saw them each day during the trial, which lasted nearly two months, their attentiveness, and their verdict which acquitted some of the defendants and convicted others. He found the charges to be without foundation. We affirmed his findings, 349 F.2d 20, 50, and certiorari was not applied for on this ground.

It also appeared from the record of that motion that sums of money were offered or given to bellboys to sign affidavits charging misconduct of Marshals and jurors. It further appeared that Mrs. Emolene Akers, a juror who had been charged with making prejudicial statements in Tennessee (after the verdict) was in Florida at that time.

The affidavits of the four prostitutes, however, were not before the District Judge when he ruled on the first motion for a new trial. But, as we pointed out in discussing the affidavit of bias and prejudice, the prostitutes were known to the bellboys who procured them. These bellboys signed affidavits concerning misconduct of jurors and Marshals which were filed in support of the original motion for a new trial. With these leads available, no plausible explanation was given as to why appellant should not then have been able to secure from the prostitutes the same information which he obtained nearly eighteen months later. If such nightly revelry ever took place in the hotel with so many people involved, its notoriety would have been most difficult to conceal from the appellants and their alert attorneys and investigators. The defense did not overlook investigation of jurors and even employed an elec-

tronics expert to intercept FBI radio communications. See United States v. Hoffa, 349 F.2d 20, 39. Apparently no difficulty was experienced in "discovering" the misconduct after the judgment was affirmed.

The District Judge concluded from the record that diligence in procuring the information could not be inferred, and we agree.

We also agree with the trial Judge that diligence can not be inferred in procuring the information that two of the jurors had made statements prior to the trial indicating bias and prejudice.

But the trial Judge went further. He considered the affidavits and counteraffidavits and made findings of fact. It was unnecessary for him to do this since there was adequate basis for denying the motion on the ground of lack of diligence. He was apparently motivated by a desire to pass upon all of the issues. We will therefore review his findings.

The trial Judge found as a fact that no juror or alternate juror was at any time furnished a prostitute by any Marshal, nor did any juror have any contact with or engage in any conversation with any prostitute, including the four named prostitutes; that no juror at any time prior to submission of the case discussed the case with anyone or expressed any opinion as to the guilt or innocence of any Appellant, or made any comment or expressed any prejudice against any Appellant, nor were any statements prejudicial to Appellants made by any third party in the presence of the jury, nor did any juror fail to fully and truthfully respond upon his respective voir dire examination; that no Marshal had made any remark prejudicial to any Appellant or in the presence of a juror; that no Marshal had provided any juror with alcoholic beverages or bestowed other gifts or favors upon any juror, or did anything calculated to influence any juror; that no unauthorized separation of the jury occurred during the trial of the case and at no time was any juror

out of the presence of a Marshal; that the Marshals had at all times during their attendance upon the jury conducted themselves in accordance with the instruction of the Court.

The Court placed no credence upon the affidavits of the four prostitutes "who admit selling their bodies, if not their signatures, for immoral purposes for $20," nor did he believe the affidavits of the two who claimed they were procurers of the prostitutes, but who did not purport to identify any of the jurors, nor did he credit the affidavits of fellow employees of two jurors, pointing out that one of them, after giving an affidavit accusing a juror of perjury on his voir dire examination, had invited the same juror to a social affair at which alleged statements of jury misconduct were made by the juror.

■ In our opinion, these findings of fact are supported by substantial evidence and are not clearly erroneous. In denying the third motion, the District Judge did not abuse his discretion.

Were Appellants Entitled to an Oral Hearing, with Live Witnesses, on Their Charges of Juror and Marshal Misconduct?

This same point was raised in the direct appeal, where it was argued that Appellants were entitled to an oral hearing on their original motion for a new trial charging misconduct of jurors and Marshals. Affidavits in support of that motion were filed and the Government filed counteraffidavits. We held that the District Court did not abuse its discretion by denying the motion for a new trial without an oral hearing. Appellants did not seek certiorari on this issue and our ruling has become the law of the case.

■ Moreover, an oral hearing was not required to determine whether diligence was exercised in filing the third motion for a new trial, because lack of diligence was apparent on the face of the record.

Both first and third motions for a new trial alleged misconduct of jurors and Marshals of much the same nature. They both had their foundation in a common source of information, namely, the bellboys, which lead to the prostitutes and was available at the time the first motion was filed, nearly eighteen months prior to the third one.

Nor do we believe a District Court is required to conduct an oral hearing on a motion for a new trial in every case, no matter how outlandish, imaginative, and irresponsible the allegations might be.

■ It has long been settled that the District Court may hear a motion for a new trial on newly discovered evidence and decide it on affidavits. Where affidavits and counteraffidavits are filed, the Court may adopt findings of fact. This procedure was approved by the Supreme Court in United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1945). In that case the Court of Appeals had set aside findings of fact of the District Court adopted upon consideration of affidavits and counteraffidavits, and reached a different conclusion on the facts. The Supreme Court reversed the Court of Appeals, holding that the District Court's findings of fact were supported by substantial evidence, and that Appellate Courts should "refrain from reviewing findings of fact which have evidence to support them", id. 113, 66 S.Ct. 467.

In *Johnson* the defense claimed that a Government witness had perjured himself and submitted affidavits to establish this fact. Counteraffidavits were filed by the Government. In that case the facts substantiating the allegations of perjury by the witness were, as almost always must be the case, outside the personal knowledge and observations of the trial judge. What the trial judge did see (and what the Supreme Court thought made him exceptionally qualified to pass on the motion without a hearing) was the demeanor of the witness on the stand while he was supposedly perjuring himself.

In our case the alleged improper conduct took place outside of the courtroom

and the presence of the District Judge, but like the Judge in the *Johnson* case, he did see the jurors every day while they were supposedly repeatedly violating their oaths (as well as his frequent instructions as to their duties as jurors).

Thus the critical observations of the trial judges in *Johnson* and *Hoffa* were the same; they daily viewed closely people who were supposedly breaking their oaths as witnesses and jurors; neither judge had firsthand knowledge of the facts stated in the affidavit. The Judge in *Johnson* compared his knowledge of the witness' demeanor with the allegations of the motion for a new trial and concluded that the witness had not broken his oath; the District Judge made a similar comparison in the present case when he ruled upon the first motion for a new trial. The observations which he then made, which are set forth at length in our opinion on the direct appeal, apply with equal force here. 349 F.2d 20, at page 50.

We think *Johnson* is dispositive of this case and is binding upon us. We find no basis to distinguish it. We will not give credence to factual claims which the trial judge, on consideration of the affidavits in the light of his personal knowledge of what transpired at the trial, has found to be untruthful.

We followed *Johnson* in United States v. Crowder, 351 F.2d 101 (6th Cir. 1965) and in Stern v. United States, 260 F.2d 365 (6th Cir. 1958). Other Circuits have followed the same rule. United States v. Astore, 309 F.2d 144 (2nd Cir. 1962); United States v. Troche, 213 F.2d 401 (2nd Cir. 1954); Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). Lyles v. United States, 272 F.2d 910 (5th Cir. 1959) recognized this rule but remanded for an oral hearing because the Government joined with the defense in requesting it.

This is not a case where a witness has recanted, or where the Government's witness has testified falsely, or where the Government has confessed error.

Nor has any Marshal or juror reported any wrongdoing to the Court. Cf., Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). Furthermore, this is not a habeas corpus or Section 2255 proceeding, involving different statutory procedures.

In our opinion, the body of law which has developed in connection with motions for a new trial on newly discovered evidence has not been overturned or rendered obsolete by these statutory post-conviction procedures which are not before us. We apply the rule in *Johnson* and have no authority to overrule or limit it.

Our dissenting brother states that he will feel better if James Hoffa and his co-defendants are given no more but no less consideration than is obtainable by every person charged with crime. We believe that they have already been accorded such consideration. We are bound to apply the law as we find it regardless of the person involved.

The record here does not indicate any lack of concern or consideration by the courts of Appellants' claims. In these and related cases literally hundreds of legal questions have been raised. Hoffa's first motion for a new trial contained ninety different grounds. In appellants' direct appeal sixteen main questions were presented, which were divided into thirty-six parts. This is the third appellate review, and a fourth appeal is pending.

The Supreme Court has affirmed Hoffa's conviction. He was represented by a battery of able and experienced trial lawyers who overlooked nothing. He did not lack investigators.

The Courts are always open to hear as many proceedings as Hoffa and his co-defendants may desire to commence.

In a footnote the dissent alludes to the post-conviction proceedings of one Townsend, who was convicted of murder and sentenced to death, as showing the concern of today's courts for those who are charged with or convicted of crime. However, Townsend's various proceed-

ings principally involved the question of whether his confession was voluntary, and they ultimately resulted in no gain for him except delay. When all of Townsend's efforts are compared with those of Hoffa, as above set forth, they appear to be minuscule.

The reliance in the dissent on the rule applicable to summary judgment in civil cases, is misplaced. No summary judgment was entered on the merits of this case. There was a protracted trial by jury. We do not agree that the carefully prepared and well reasoned opinion of the District Judge dealing with the troublesome problems raised in the third motion, constituted an easy dispatch of that motion. His procedure was fully authorized by *Johnson* and the other cases cited in his opinion.

The Government secured affidavits from the jurors in connection with the original motion for a new trial and again in resisting the third motion for a new trial. We think these contacts with the jurors are about enough. There is the countervailing consideration of protecting the jurors from inquisition, harassment and unnecessary embarassment in a hearing. This consideration involves more than just the sensibilities of the individual jurors, but also the integrity of the judicial process. If defendants could so easily force jurors into lengthy and scandalous hearings, reputable members of the public would certainly be reluctant to serve.

■ The question of whether to determine the motion on affidavits or in a hearing, was within the discretion of the trial court. We find no abuse of discretion.

Affirmed.

O'SULLIVAN, Circuit Judge (dissenting in part).

I regret that I cannot fully agree with my brothers of the majority. I do not express a view that a new trial should be granted, but would remand the case to the District Judge for a hearing upon the issues raised by the affidavits supporting, and those opposing, the motion for new trial.[1]

Defendants file numerous affidavits describing conduct of jurors and United States Marshals which, if true, denied defendants their constitutional right to trial by jury. If the identified jurors and the marshals did half of what is charged to them, the Hoffa trial was, as far as they were concerned, an idle and frivolous ceremony; guilt of Hoffa and his co-defendants was assumed by some of them, and for nearly all of the male jurors the period of their sequestration provided the occasion and opportunity for revelry and illicit sexual indulgence. Neither the District Judge's opinion nor the government's address to us suggests that such conduct, if it actually took place, could be viewed otherwise than as depriving the defendants of a fair trial.

If the accusing affidavits are untrue, the filing of them constitutes brazen criminal activity—false swearing by the affiants (some eleven different deponents make up the company of possible false swearers) and the deliberate subordination of perjury by others. Their execution and the procuring of them, in such circumstances, would constitute as vicious and despicable an attempt to undermine the integrity of our entire court system as the original charges of jury tampering. But even though we may entertain personal belief that the mentioned affidavits of the prostitutes and others were perjured, we may not, in my view, approve a disposition of such serious charges solely upon the affidavit denials of the accused jurors and marshals. The very gravity of the situation forbids its easy dispatch.

While the District Judge discussed the question of the delay in making the involved motions and whether the allega-

---

1. I would not require any hearing on the charges made against the trial judge—one of our distinguished and able District Judges. The falsity of the charges made against him is, of course, within his personal knowledge.

tions contained in the affidavits could properly be regarded as "newly discovered evidence," he went on to dispose of the motion as follows:

" * * * the Court can and will however decide the factual issues raised by the present motion for new trial on the basis of the affidavits and counter-affidavits filed herein. *The law is well settled that a motion for new trial based upon newly discovered evidence may be decided by the Court upon the affidavits and counter-affidavits filed in support and opposition to the motion."* (Emphasis supplied.)

In affirming him, my colleagues say,

"It has long been settled that a Court may hear a motion for a new trial based on newly discovered evidence *and decide it on affidavits.* Where affidavits and counter-affidavits are filed, the Court may adopt findings of fact." (Emphasis supplied.)

I must respectfully disagree that there is such a broad rule properly applicable to the type of situation we deal with here. The opinions recited as supporting the rule relied upon, United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946); United States v. Astore, 309 F.2d 144 (CA 2, 1962); Lyles v. United States, 272 F.2d 910 (CA 5, 1959); Stern v. United States, 260 F.2d 365 (CA 6, 1958); United States v. Troche, 213 F.2d 401 (CA 2, 1954); Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. den. 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145; Hillman v. United States, 192 F. 264 (CA 9, 1911), cert. den. 225 U.S. 699, 32 S.Ct. 834, 56 L.Ed. 1263; United States v. Crowder, 351 F. 2d 101 (CA 6, 1965), are not apposite in the context of this case. In the main, they are decisions where the newly discovered evidence consisted of post-trial declarations by individuals that testimony given by prosecution witnesses was perjured, evidence that would add to or corroborate defense testimony, or evidence by a prosecution witness recanting his trial testimony. Generally, the judge hearing the motion had seen and heard the witness whose trial testimony was challenged by the newly discovered evidence.

The opinion most cited for the claimed permissibility of resolving factual issues presented by a motion for new trial upon affidavits is United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, supra, in which the factual issue presented was whether a prosecution witness had testified falsely. The charges of false swearing were made in affidavits supporting motions for new trial; opposing affidavits were filed by the government. The trial judge denied a first motion and his conduct was described by the Supreme Court as follows:

"The trial judge in a carefully prepared opinion covering fifty-six pages of the record, gave thoughtful consideration to each affidavit, reached the conclusion that none of them showed that Goldstein had perjured himself, and found both from the new affidavits *and his own knowledge of the original six-weeks trial, that Goldstein's testimony was true.* The motion for a new trial was consequently denied." 327 U.S. at 109, 66 S.Ct. at 465. (Emphasis supplied.)

A second motion for new trial, based upon further newly discovered evidence, was also denied by the trial judge. In approving this conduct, the Supreme Court said,

"The trial judge's findings *were supported by evidence. He had conducted the original trial and had watched the case against Johnson and the other respondents unfold from day to day.* Consequently the trial judge was exceptionally qualified to pass on the affidavits. The record of both the original trial and the proceedings on the motions for a new trial shows clearly that the trial judge gave the numerous elements of the controversy careful and honest consideration." 327 U.S. at 112, 66 S.Ct. at 466. (Emphasis supplied.)

The critical difference between *Johnson* and the case before us lies, as it does

in the other cases relied upon by the majority, in the fact that the charged misconduct *there* involved—false testimony—occurred within the immediate view and attentive hearing of the trial judge. The judge had also seen and heard the testimony of all of the witnesses sworn at the trial. This evidence was part of the material available to the trial judge in resolving the question of whether the accused witness had testified falsely. I do not read *Johnson* as holding that an issue of fact such as is presented by the competing affidavits filed in this case can be resolved solely by consideration of the affidavits.

In United States v. Crowder, supra, and in Gordon v. United States, 178 F.2d 896 (CA 6, 1949), cert. den. 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353, we were presented with situations analogous to the *Johnson* case—situations in which witnesses had testified at trial in the presence of the District Judge, and later gave recanting affidavits—situations not involved in the case before us. We said in *Crowder:*

> "In this case the district judge heard Tucker's testimony before the jury * * *. This same witness now has undertaken by affidavit to change his story * * *." 351 F.2d at 104.

And we quoted from Lyles v. United States, supra, that:

> "*Ordinarily* the district court may in its discretion determine a motion for new trial upon affidavits without more. Ewing v. United States, 1942, 77 U.S.App.D.C. 14, 135 F.2d 633, 638. There are, however, *exceptional cases* in which an oral hearing should be granted. * * *" Id. at 104, 105. (Emphasis supplied.)

But notwithstanding the above language, the Fifth Circuit in *Lyles* reversed the district judge, who had denied a motion for new trial solely on the basis of the affidavits, and remanded the matter for an evidentiary hearing. A reading of Ewing v. United States, 135 F.2d 633 (CA D.C., 1942), cert. den. 318 U.S. 776, 63 S.Ct. 829, cited in *Lyles* leaves uncertain the contents of the affidavits there,

but again they dealt with conduct observed in open court. Without further analysis of the other opinions relied on for the assertion that *in this case* it was proper to dispose of the motion solely upon the conflicting affidavits, my own study of them and their special facts persuades me that they do not support or announce the broad proposition of law relied on by the District Judge.

It should be noted that in disposing of an earlier motion for new trial charging misconduct by the jury, the District Judge took occasion to emphasize his own observations of the good conduct of the jury while in his presence, and his inquiries of the deputy marshals as to their proper care of the jurors. These observations were not included in his memorandum denying the motion here involved. But even had they been, that would not suffice: all of the misconduct now charged, if true, occurred *outside* of the courtroom and *outside* of the presence of the judge; the affidavits include statements that contrary to their responsibilities while they were sequestered, the jurors and marshals were in contact and communication with strangers to the case on trial. Prejudice to the defendants would be presumed if these events actually occurred. See Mattox v. United States, 146 U.S. 140, 148–50, 13 S.Ct. 50, 36 L.Ed. 917, 920, 921 (1892); Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654, 656 (1954); Ryan v. United States, 89 U.S.App.D.C. 328, 191 F.2d 779, 780, 781 (1951).

I find no decision which provides clear precedent for the stand I take. However, in Wheaton v. United States, 133 F.2d 522 (CA 8, 1943) and in Richardson v. United States, 360 F.2d 366 (CA 5, 1966), the respective courts of appeals remanded for evidentiary hearing, charges of improper communication with a juror, made in motions for new trial. I concede that their facts provide some distinctions from the matters before us. They do, though, emphasize the importance of taking testimony to resolve issues arising from claims of extraneous

interference with a jury's consideration of a case. In remanding in *Richardson*, the Court said:

"The allegation of fact in the third ground of the motion that the witness Treherne engaged in a private conversation with one of the jurors must stand as confessed since no hearing was conducted. Prejudice will be assumed in the form of a rebuttable presumption. [citations omitted] In failing to conduct 'a thorough inquiry * * * to determine exactly what * * * occurred' before overruling the motion, the trial court abused its discretion." 360 F.2d at 369.

Moreover, in numerous post-conviction applications for relief in habeas corpus and § 2255 matters, the United States Supreme Court has admonished repeatedly against disposing of factual assertions regarding constitutional wrongs without an evidentiary hearing. In Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941), the Court, dealing with a factual issue presented in a habeas corpus petition, said:

"On a hearing he [the defendant] would have the burden of sustaining his allegations by a preponderance of evidence. It is true that they are denied in the affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way. They can have no other office. The witnesses who made them must be subjected to examination ore tenus or by deposition as are all other witnesses. Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. *The Government's contention that his allegations are im-*

*probable and unbelievable cannot serve to deny him an opportunity to support them by evidence.* On this record it is his right to be heard." 312 U.S. at 286–287, 61 S.Ct. at 579. (Emphasis supplied.)

Such also is the rule of Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), which we followed in Scott v. United States, 349 F.2d 641, 643 (CA 6, 1965). To the same effect, see Doyle v. United States, 336 F.2d 640, 641 (CA 9, 1964); Wright v. Dickson, 336 F.2d 878, 882, 883 (CA 9, 1964); Romero v. United States, 327 F.2d 711, 712 (CA 5, 1964); Evans v. Eyman, 363 F.2d 540, 542 (CA 9, 1966); Del Piano v. United States, 362 F.2d 931, 933 (CA 3, 1966). While these cases do not involve motions for new trial on newly discovered evidence, they expose the law's current and especial concern that claims of deprivation of constitutional rights be not summarily disposed of. In my view, it would be anomalous to have required an evidentiary hearing had the defendants chosen to present the identical charges now before us in a § 2255 petition, filed after they had been taken into custody, but to deny such a hearing on the present motion.[2]

Trial judges are not permitted to resolve issues of fact presented by opposing affidavits in summary judgment proceedings (6 Moore's Federal Practice, § 56.11[3], p. 2163), and I am not aware of any other procedure which permits a trial judge to adjudicate essential and critical issues of fact solely upon his reading, and his own weighing of the relative probative worth, of conflicting affidavits.

Were my view to prevail, I would indeed share the regret of my colleagues and the District Judge that jurors be subjected to the annoyance, publicity and

---

2. Were charges of the kind here involved made in habeas corpus or in a Section 2255 petition, the subject of diligence, so emphasized by my brothers of the majority, would be irrelevant in determining whether a hearing should be had. I do not think that the form of presenting such type of charges gives reality to the distinction relied upon by the majority opinion; we are dealing here not with the traditional type of motion for new trial, but one which in all pertinent respects fits more closely into the context of a habeas corpus proceeding.

inconvenience that would be visited upon them by an evidentiary hearing. And I would regret the burden on the judiciary from repetitive efforts of one convicted of crime to escape the law's punishment.[3] But the law is patient and does not tire of examining into the question of fair trial. The now landmark case of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) involved the claim of unfair trial by one convicted of murder in the first degree. Townsend was convicted in 1955 and in the ensuing 12 years his charges of constitutional deprivation have been considered and reconsidered approximately 18 times by various levels of state and federal judicial authorities.[4] As of the last of the appellate decisions set out in footnote 4, Townsend's 1955 conviction was found to be without fault, but it is my understanding that application has since been made for further judicial scrutiny.

That I may entertain a personal belief that the spectacular story told by the affidavits produced by Hoffa and his co-defendants is pure fabrication and perjurious does not permit me to deny an evidentiary hearing. Such a hearing may indeed provide the best means of exposing and punishing a deliberate and sinister attempt to vitiate a jury's verdict or, however unlikely, reveal a shocking disregard by the accused jurors and marshals assigned to safeguard them, of the solemn oaths they made and the responsibilities they accepted.

I will feel better if, when our processes have run their full course, it can be said that James Hoffa and his co-defendants were given no more, but no less, than the concern which today's courts exhibit for the constitutional rights of even the most vicious and obviously guilty felons. In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the United States Supreme Court took occasion to say,

"Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." 373 U.S. at p. 8, 83 S.Ct. at p. 1073.

In my opinion, a remand for an evidentiary hearing would not call for admission of the defendants to bail pending its completion. The initial impression of implausibility made by these extreme charges should preclude such action.

I would remand this matter to the District Court for an evidentiary hearing, limited, of course, to consideration of the charge of jury misconduct.

3. The United States Courts, however, are not without potent weapons to discourage these impositions. Their awesome power to punish for contempt or perjury, if courageously employed, will provide needed deterrents.

4. Townsend's conviction has been reviewed as follows: conviction affirmed, People v. Townsend, 11 Ill.2d 30, 141 N.E.2d 729, 69 A.L.R.2d 371 (1956), cert. den., Townsend v. People of State of Illinois, 355 U.S. 850, 78 S.Ct. 76, 2 L.Ed.2d 60 (1957); post-conviction relief denied in Illinois state trial and Supreme Courts, cert. den., Townsend v. People of State of Illinois, 358 U.S. 887, 79 S.Ct. 128, 3 L. Ed.2d 115 (1958); post-conviction relief in federal District Court denied, appeal dismissed, United States ex rel. Townsend v. Sain, 265 F.2d 660 (CA 7, 1958), rev'd. and remanded, Townsend v. Sain, 359 U.S. 64, 79 S.Ct. 655, 3 L.Ed.2d 634 (1959); petition dismissed in District Court, aff'd. United States ex rel. Townsend v. Sain, 276 F.2d 324 (CA 7, 1960), cert. granted, Townsend v. Sain, 365 U.S. 866, 81 S.Ct. 907, 5 L.Ed.2d 859 (1961), rev'd. and remanded, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 945, 9 L.Ed.2d 770 (1963); decision of District Court ordering new trial rev'd., United States ex rel. Townsend v. Ogilvie, 334 F.2d 837 (CA 7, 1964), cert. den. Townsend v. Ogilvie, 379 U.S. 984, 85 S.Ct. 683, 13 L.Ed.2d 574 (1965); motion to allow amendment of petition denied in District Court, aff'd., United States ex rel. Townsend v. Ogilvie, 360 F.2d 925 (CA 7, 1966), cert. den., Townsend v. Ogilvie, 385 U.S. 938, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966).