**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Woodrow Wilson COMPTON, Defendant-
Appellant.**

**No. 16295.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1966.

John J. Hooker, Nashville, Tenn. (Tyree B. Harris, III, Nashville, Tenn., on the brief), for appellant.

Jere B. Albright, Asst. U. S. Atty., Memphis, Tenn. (Thomas L. Robinson, U. S. Atty., Memphis, Tenn., Wallace H. Johnson, Peter R. Richards, Attys., Dept. of Justice, Fred M. Vinson, Jr., Asst. Atty. Gen., Crim. Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

Woodrow Wilson Compton, hereinafter referred to as Defendant, was indicted in the Western District of Tennessee on three counts. Count 1 charged him with violation of Title 18, U.S.C., Section 1952; Count 2 with violation of Title 18, U.S.C., Sections 2 and 1952; and Count 3 also with violation of Title 18, Sections 2 and 1952. Count 2 was dismissed at the request of the Prosecuting Attorney. Defendant went on trial before a jury on Counts 1 and 3. Defendant appeals.

In the Spring of 1948, Defendant moved to West Memphis, Arkansas. For a short period during 1953 and 1954, he operated a sporting goods store. Later, he became part owner of a beauty shop. Since 1953 the Defendant has been in the gambling business. Sometime in 1960, he converted a room attached to his house for use as a gambling area and equipped it with gambling devices necessary to operate a dice game. On May 26, 1962, Defendant's gambling establishment was raided by the West Memphis, Arkansas police who confiscated his gambling equipment. Following the raid, Defendant, while still a resident of West Memphis, Arkansas, frequented a gambling establishment in Tipton County, Tennessee. At this time Defendant learned that an acquaintance of his was being prosecuted for violation of Title 18, U.S.C., Section 1952. Sometime in August or September of 1962, Defendant consulted an attorney in Arkansas, inquiring of the attorney as to the provisions of Section 1952 relative to interstate travel to commit gambling. The attorney advised him that if Defendant made a bona fide change of residence not connected with an overt act in aid of an unlawful enterprise, he would not be in violation of the statute.

On September 11, 1962, one Norris Nix, a friend and gambling associate of Defendant, purchased a farm consisting of 45 acres, including a six-room dwelling in Tipton County, Tennessee, for $27,000. The attorney who handled the transaction testified that Defendant was present when the transaction was closed, although he was unable to identify Defendant at the trial. Nix began immediately thereafter to renovate the six-room dwelling.

On September 30, 1962, Defendant rented a house in Frayser, Tennessee, a suburb of Memphis, and about 15 miles from the property purchased by Nix. Defendant moved into the house on October 2, 1962. Next day, October 3, 1962, Defendant entered negotiations with Nix for the purchase of the farm and one day later, October 4, 1962, title to the farm was transferred to Defendant. The consideration for the farm was approximately the price that Nix had paid for the property, even though Nix had done some remodeling to the premises.

Defendant admits that he intended to convert the property to a gambling place. After title was transferred to Defendant, Nix and Defendant continued the remodeling. On or about December 10, 1962, Defendant and Nix, as partners, opened the farmhouse, later to be known as Twin Oaks Club, for public gambling.

Section 1952, Title 18, U.S.C., provides in pertinent parts, as follows:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling,

874

* * * in violation of the laws of the State in which they are committed or of the United States, * *."

The questions presented to this Court are:

(1) Does the evidence support the jury's finding that Defendant possessed the necessary statutory intent at the time of his interstate travel to manage, establish, carry on, or facilitate a gambling business in violation of state law?

(2) Does 18, U.S.C., Section 1952, apply to one who changes his legal residence from one state to another with intent to establish an unlawful gambling business, and does, as a matter of fact, after changing his residence, so engage in the operation of a gambling establishment?

Addressing ourselves to the first question, we answer in the affirmative. The evidence presented to the jury was overwhelming that Defendant did possess the necessary intent required by Section 1952. By Defendant's own admission, he was a professional gambler for many years. After selling his sporting goods store in 1955 he continuously operated a gambling business, conducting a gambling establishment in his home and later expanding his gambling activity by converting a room attached to his home for use as a gambling area. He operated unmolested until a police raid of May, 1962. Thereafter he frequented a gambling casino in Tipton County, Tennessee, and later opened a gambling establishment in the same County in close proximity thereto. He consulted his attorney as to the effect of Section 1952 before moving to Tennessee. From the evidence the jury could find that Defendant participated in the acquisition of the Tennessee farm with Nix, before establishing a residence in Tennessee. The Defendant then acquired the property from Nix two days after moving to Tennessee with intent to convert it into a gambling place, and did so convert it and opened it to the public within a short period of several months These were all established facts.

Intent as an element of an offense may be inferred from the established facts. Wuichet v. United States, 8 F.2d 561 (C.A. 6, 1925). A jury must be allowed to draw inferences of intent from proof of other objective facts and actions of the defendant. Battjes v. United States, 172 F.2d 1 (C.A. 6, 1949).

The law is settled that evidence of a substantial course of illegal conduct, occurring a reasonable time before and after an act of interstate travel, will allow a jury to infer that the travel was undertaken with the intent to carry on the unlawful activity. United States v. Farber, 336 F.2d 586 (C.A. 6, 1964); United States v. Sapperstein, 312 F.2d 694 (C.A. 4, 1963); Brooks v. United States, 309 F.2d 580 (C.A. 10, 1962); Flanagan v. United States, 308 F.2d 841 (C.A. 5, 1962), cert. denied 374 U.S. 838, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963).

The appellate court in a criminal case must view the evidence in the light most favorable to the Government, accept all reasonable inferences drawable therefrom and affirm if substantial evidence was presented from which a jury could convict. Ramsey v. United States, 248 F.2d 740 (C.A. 6, 1957); Dodson v. United States, 215 F.2d 196 (C.A. 6, 1954); Henderson v. United States, 202 F.2d 400, (C.A. 6, 1953), cert. denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); Battjes v. United States, supra.

The undisputed facts and circumstances were sufficient for the jury to conclude that Defendant traveled with the requisite Section 1952 intent. The evidence as a whole justified this finding.

Addressing ourselves to question No. 2. Defendant relies on Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), a case brought for violation of the Mann Act, to sustain his position that if one travels in interstate commerce for the purpose of moving his domicile that Section 1952 is not violated. We would agree with Defendant if the only reason was to accomplish a change of residence. However, the evidence in the present case shows

clearly that Defendant changed his residence for reasons other than change of abode.

No evidence whatsoever was presented in the *Mortensen* case that the defendants traveled with any purpose other than an innocent one. In the present case there is ample evidence to establish that Defendant's dominant intention for traveling to Tennessee was to continue his gambling activity, not to change his place of residence. The evidence clearly discloses a course of conduct by the Defendant to engage in a gambling enterprise. The actual change of his residence to another State was only incidental to the accomplishment of this purpose and thus falls within the purview of Title 18, U.S. C., Section 1952.

Judgment affirmed.