**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony R. DAY, Defendant-Appellant.**

**No. 18085.**

United States Court of Appeals
Sixth Circuit.

May 14, 1968.

———◆———

Robert J. Shockey, Court appointed, Chattanooga, Tenn., for appellant.

John H. Reddy, U. S. Atty., Chattanooga, Tenn., for appellee; Robert A. Scott, Asst. U. S. Atty., Chattanooga, Tenn., on brief.

Before O'SULLIVAN and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

This is an appeal from a conviction, following a jury trial, under an indictment for forcibly breaking into a United States post office with the intent to commit larceny, in violation of 18 U.S.C. § 2115.[1] The sole question presented is whether the evidence introduced at the trial is sufficient to sustain the conviction.

The government's evidence was the following:

Superintendent Higdon of the Red Bank, Tennessee post office testified that he arrived at the post office at approximately 3 p. m. on Sunday, February 26, 1967, and noticed that the blinds on the front window, which are usually open, were closed. He also saw a Volkswagen automobile in the parking lot. Appellant and his co-defendant Brock (who did not appeal his conviction) were observed leaving the post office, and appellant was seen to be wearing a goatee. Appellant entered the Volkswagen, and Brock pushed the car in order to start it.

Higdon testified further that upon entering the post office, the outer doors of which were always unlocked, he observed that a dutch door leading to an inner work area had been forced open. An inspection revealed that nothing was missing from the post office. Higdon telephoned Postal Inspector White, and together they drove off in search of the defendants, apprehended them and placed them under arrest. At the time of the arrest, appellant was observed to have shaved off his goatee. No postal property was found in the possession of either defendant.

Inspector White then testified that following the arrest, he returned to the

1. 18 U.S.C. § 2115:
   Whoever forcibly breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

post office and took palm prints from the broken door, and forwarded them to Cincinnati so that they could be compared with defendants' prints.

Richard Shipp, a fingerprint expert, testified that in his opinion, the prints taken from the door were those of defendant Brock.

The government's final witness, postal driver Battles, testified that he arrived at the post office between 2:00 and 2:20 p. m. on the day in question, and observed that the dutch door was not broken at that time.

No evidence was presented on behalf of defendants.

■ In determining the sufficiency of the evidence supporting a conviction, the reviewing court must take the view of the evidence most favorable to the government, accept all reasonable inferences which can be drawn therefrom, and affirm if substantial evidence was presented from which a jury could convict. United States v. Compton, 355 F.2d 872, 874 (6th Cir. 1966), cert. denied, 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed.2d 548 (1966). In this case we find the evidence to have been insufficient.

Appellant contends that there was evidence neither of entry nor of intent to commit larceny, both of which are elements of the offense charged. Although the jury might have determined from the fact that the door was broken and that it bore Brock's prints that appellant's co-defendant had entered the inner room of the post office, there was no evidence that appellant had made such entry. Moreover, the evidence does not support a finding that appellant had the requisite intent to commit larceny. The inner office was found not to have been disturbed, nor was any postal property found in the possession of either defendant. On the basis of the government's evidence, appellant could have entered the post office with the intent to commit vandalism or with no criminal intent at all as easily as with the intent to commit larceny, as charged.

The judgment is reversed and the case is remanded for entry of a judgment of acquittal.

O'SULLIVAN, Circuit Judge, concurs in the foregoing opinion.

McALLISTER, Senior Circuit Judge.

I concur with the views of Judge McCree reversing the judgment and, in effect, discharging appellant Day.

However, in a criminal case where a defendant has been convicted of a serious crime, it seems to me that in reversing the judgment entered upon a jury verdict and discharging the defendant, it is frequently becoming to review, with special particularity, the evidence of innocence in comparison with the absence of evidence of guilt. It is for this reason that, in concurring with Judge McCree, I feel it proper to make a somewhat more comprehensive statement of the evidence in the case and the bearing of such evidence upon my conclusions, as follows:

Superintendent Higdon of the small post office in Red Bank, Tennessee, drove to the post office on a Sunday afternoon about three o'clock. He parked his car a few feet from a rather badly damaged Volkswagen, in the parking area, near the front steps at the entrance to the post office. Mr. Higdon said, first, that the front blinds of the window of the post office were closed; on another occasion, he said one of the blinds on the window was closed. He stated that the shades—or blinds, as he afterward described them, were provided to keep out the sun. Ordinarily, he said, the blinds were kept open. On the day in question, he stated, one of them was closed. At the top of the steps, at the entrance to the post office, was a glass door through which anyone could see inside, and which was always left unlocked; and anyone could go into the post office at any time.

Mr. Higdon parked his car four feet from the Volkswagen, and sat there "a minute or two." He said he did not immediately get out of his car because he

was a little suspicious, because of seeing the unfamiliar car parked there, and because the blinds, or one of the blinds, on the front window were closed, since they were customarily open. After a minute or two, he saw two young men coming out of the post office.

They paid no attention to him. They were not seeking to avoid him. There was nothing suspicious about their conduct. Mr. Higdon, as mentioned, was parked only four feet from the Volkswagen which, as heretofore mentioned, had been damaged by being battered in, both in the front and in the rear. One of the young men got into the driver's seat of the damaged car. This young man, who was appellant Day, was only about five or six feet from where Mr. Higdon was sitting, and he could see him so clearly that he afterward identified him without question. As soon as the driver was in his seat, the other young man, Delo Brock, immediately started to push the Volkswagen to get it started; and it was obvious that they knew the damaged car had to be pushed to get the motor operating. When the engine caught, Brock, who had been pushing the car, walked by Mr. Higdon, who was only three feet away from him as he went by. All during the time these young men were there—when they first came out of the post office; when one of them got into the driver's seat of the Volkswagen; and when the other started pushing it to get it started, and passing within three feet of Mr. Higdon—they betrayed no sense of furtiveness, nor did they arouse any suspicion on the part of Mr. Higdon as to their conduct. They never paid any attention to Mr. Higdon as he sat there in his car so close to them, watching them. They never even glanced at him. There was no haste or hurry on their part in leaving the post office, or any attempt to avoid observation, or attempt to flee the place. Mr. Higdon stated that he saw nothing about them that would indicate to him that either of them was evasive, or that they had done anything of an unlawful nature, or that they were trying to make

an escape, or flight from the scene, or avoid the observation of anyone. They showed no wariness, nor was there anything watchful or secretive about their conduct.

After the two young men had driven away, Mr. Higdon entered the post office for the purpose of assembling a storage cabinet that had previously been delivered.

The arrangement of the post office is as follows: One enters through the glass door. The main floor is divided into what is called a lobby, into which anyone may enter at any time, and where customers may purchase stamps from vending machines. Many persons also have postal boxes in the lobby to which they may gain access at any time of day or night. The lobby is separated from the working area, where the carriers work and, behind the counter part, where the clerks work. Admittance to the working area is through a Dutch door, the top half of which opens, and the bottom half of which opens. Each half of the door has its own lock; and both parts of the door are kept locked when none of the postal officials, clerks, or carriers are present.

When Mr. Higdon went toward the door, he found that the top part "was standing open, slightly ajar." The door is a veneer door; "it's not a solid door, and the layers had been split where the lock went down into the other part of the door." As soon as Mr. Higdon saw the condition of the door, he immediately called Postal Inspector White. This was a few minutes after the young men had left.

Postal Inspector White testified that he had received his call from Mr. Higdon—"a telephone report that there had been an attempt to burglarize the Red Bank Post Office." Mr. White further testified:

"Based on the description of the automobile and at least one of the occupants or people who allegedly drove off in the vehicle, I immediately got in my mind of a suspect and knew

that he fit this description and that he had available to him a red Volkswagen automobile in the condition as described so I went, took Mr. Higdon in my automobile with me, went to a residence over in the Tyner area where I thought the vehicle might be located and upon arriving at that residence, the vehicle was not observed, not seen. So, then we started back and we were headed toward Suck Creek Road where I thought that this automobile might be located, and, so, we were proceeding toward Chickamauga Dam from the Tyner area and Highway 153 and just prior to getting to the intersection of Highway 58 and 153, well, just prior to that we had seen several cars of the same make and color but did not fit the actual physical description of the car. But just before getting to the intersection of Highway 58 while traveling on 153, well it was observed over in the left lane of the highway, the left two lanes over there, a vehicle which, to me, met the description of the one that we were looking for. So, I pointed it out to Mr. Higdon, I told him not to answer me right then, but to look at it closely and tell me whether or not that looked like the vehicle in question.

"He told me that it did, so then I wheeled across the median of the four-lane highway and pulled up to the rear of the automobile and Mr. Higdon advised me that was positively the automobile that he had seen at the post office. So, then, I pulled up to the rear and along the side of the red Volkswagen and he looked at the people from a rear-type slanted view. I told him then not to answer, that I wanted him to look over the people real good before he ever answered me. Then I pulled up to the side of the people in the Volkswagen and they both turned their heads to look toward us; Mr. Higdon looked at them and stated that was the two men, those were the two men who he had just recently seen at the Red Bank Post Office.

"So, then, I motioned to them, to the driver, whom I recognized as being Mr. Day, to pull over to the side, which he did. And I walked back to him, I immediately advised both of them of their rights as to attorneys, they need not make any statement, and so on, and I told them that I wanted to question them concerning the Red Bank Post Office.

"They both declined to furnish any information about it, so I told them that they had been identified as having been there, that we had had an attempt to enter the office and that they were under arrest for the attempted post office burglary. I told them to get out of the car and at that time I did pat them both down to see that they did not have weapons on them, had them to get into my vehicle and then we returned to the Red Bank station * * *."

When the two young men were arrested for breaking into the post office with intent to commit larceny, it was solely because of the evidence of the cracked upper half of the door that Mr. Higdon saw immediately when he went into the lobby. At that time no one knew whether this upper half of the door was cracked before the young men entered the open and public area of the lobby. Thus the report of Mr. Higdon to the Postal Inspector that the post office had been broken into in an attempt to commit larceny, together with his description of the men to be sought for the offense, and their subsequent arrest for the crime, was based on no evidence except that of Mr. Higdon, who had seen them coming out of the public lobby in a nonchalant, unsuspicious way.

Mr. White found no weapons being carried by the men, nor any weapons or burglary tools in the car in which they were riding nor did he find anything that might have been taken from the post office.

It was later found that there was a latent palm print on the surface of the upper half of the Dutch door in the post office; and the palm print was after-

ward identified as that of Delo D. Brock, Jr., who was a joint defendant with appellant, and who was with appellant in the post office and later in the Volkswagen.

Afterward, Mr. Higdon, the superintendent, made an examination of the post office. He found nothing missing, nothing in disarray, and the interior of the work area, entirely normal. He made a check of the postal money orders, change and currency kept in the post office, rolls of stamps, and everything of value in the work area. He found no items missing; and there was nothing he came upon that would indicate that anyone had pilfered, or attempted to pilfer, or examine, any of the contents of the post office, or had entered the work area.

Mr. Higdon stated that when appellant Day had come out of the post office about three o'clock in the afternoon, he was wearing a goatee; that about an hour later when Day and his co-defendant were driving along a country road, and were stopped by Inspector White and Mr. Higdon, appellant Day had shaved off his goatee. Mr. Higdon had no difficulty identifying both young men, and, apparently, the damaged Volkswagen could be identified anywhere. Here were two young men, casually driving at a reasonable rate of speed in the countryside, in the vicinity of the post office, in a car that could be readily identified as being identical to the battered Volkswagen that had been driven away from the post office a short time before. Whether or not appellant Day had a goatee when Mr. Higdon first saw him at the post office, need not occupy our attention. It is a confusing item of testimony that does not jell with the rest of the evidence in the case. Inspector White knew at once where to look for the two men when Mr. Higdon described them to him; and Mr. Higdon identified them both at once without regard to the goatee he had mentioned. Inspector White knew appellant Day as soon as he saw him, and

he never mentioned Day as having worn a goatee before.

There is no substantial evidence to support the verdict that appellant Day had forcibly broken into the post office to commit larceny.

The fact that appellant Day and his co-defendant, Brock, were in the post office was devoid of any suspicious circumstances as the post office was open to the public at all times. Their manner of leaving the post office, their lack of hurry; the fact that they did not even look at Mr. Higdon who was sitting four feet away from the car; the absence of any suspicious conduct on their part; their disregard of observation by Mr. Higdon or anyone else; their absence of haste, furtiveness or evasion; their being in an old badly-damaged car that had to be pushed by one of them to get it started; their casual departure; the fact that there was no evidence that anyone had entered the working premises of the post office; the circumstances that there was no evidence that anything of any value had been pilfered, or examined, and that nothing was in disarray, but that all was normal within the work area—everything in the evidence was consistent with Day's innocence. That he was with Brock in the public lobby of the post office is not evidence of his guilt of the offense of breaking into the post office with intent to commit larceny.

The absence of any consciousness of guilt where one would expect a manifestation of guilty conduct is an indication of absence of guilt, and inferences to this effect could be properly drawn, except where it might reasonably appear that such apparent innocence of conduct was feigned. But an innocent person, unjustly accused, should not be deprived of the inferences that may be drawn from a natural and unfeigned manifestation of innocent conduct.

The conviction of appellant Day for breaking into a post office with intent to commit larceny cannot be sustained on the mere evidence that a palm print of Delo Brock was found on the surface

of the upper half of the Dutch door which evidently had been hit or struck by Brock, even though such a blow had split the thin veneer coating of the door where the lock was attached. The purpose of striking or pressing this surface of the door might have been an example of vandalism, or the result of an attempt to find a restroom, for instance—or merely curiosity on the part of Brock; and whatever the purpose of hitting or striking the door on the part of Brock, could not constitute any evidence upon which to convict appellant Day of breaking into the post office to commit larceny in violation of the statute, simply because Day was present when Brock struck the upper half of the door with the flat of his hand; and there was nothing to justify any finding that there was an intent on the part of Day to commit larceny in the post office.

In accordance with the foregoing, I agree with Judge McCree that the verdict of the jury should be set aside, the judgment reversed, and appellant Day, discharged.