UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph V. FRANCO, Defendant-Appellant.

No. 19723.

United States Court of Appeals, Sixth Circuit.

Nov. 30, 1970.

---

Moses Krislov, Cleveland, Ohio, for defendant-appellant; P. D. Maktos, Washington, D. C., on brief.

Michael B. Pollack, Special Atty., Dept. of Justice, Detroit, Mich., for plaintiff-appellee; Robert J. Grace, U. S. Atty., Detroit, Mich., on brief; Jeremy G. Zimmerman, Atty., Dept. of Justice, Detroit, Mich., of counsel.

Before PHILLIPS, Chief Judge, Mc-CREE, Circuit Judge, and O'SULLI-VAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Appellant, Joseph V. Franco, appeals from judgment entered upon a jury verdict finding him guilty of violating Section 209(b) and (d) of the Labor Management Reporting and Disclosure Act (Landrum-Griffin), 29 U.S.C. § 439(b) and (d), by filing a false financial report of the 1959 affairs of Local 42 of the General Industrial Employees Union. In 1959, appellant was the Secretary-Treasurer of Local 42 and signed and caused to be filed with the Secretary of Labor of the United States the report identified as Form LM–2. The falsity charged was the alleged failure of Franco to set out in such report an accurate statement of loans that had been made to him during the year covered by the report, as required by Section 202(b) (4) of the Act, 29 U.S.C. § 431(b) (4).

The relevant statutes read as follows:

"§ 431. Report of labor organizations

\* \* \* \* \* \*

(b) Every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the following information in such detail, as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year—

\* \* \* \* \* \*

(4) direct and indirect loans made to any officer, employee, or member, which aggregated more than $250 during the fiscal year, together with a statement of the purpose, security, if any, and arrangements for repayment;"

"§ 439. Violations and penalties.

\* \* \* \* \* \*

(b) Any person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any document, report, or other information required under the provisions of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

\* \* \* \* \* \*

(d) Each individual required to sign reports under sections 431 and 433 of this title shall be personally responsible for the filing of such reports and for any statement contained therein which he knows to be false."

Schedule H of Form LM–2—under Loans Made by Organization—set out that during the relevant year, 1959, one loan out of union funds had been made to Franco in the amount of $300, for which

Franco had given his sixty day note. Upon demand for a Bill of Particulars, the government advised that the unreported loans made to Franco were:

| | |
|---|---|
| March 23, 1959 | $130.50 |
| August 31, 1959 | 73.79 |
| September 22, 1959 | 500.00 |
| September 29, 1959 | 52.32 |
| October 5, 1959 | 250.00 |
| October 5, 1959 | 500.00 |
| October 23, 1959 | 500.00 |
| November 18, 1959 | 314.31 |

Evidence showed that on the foregoing dates and in the specified amounts, checks were drawn on the Local's bank account, all signed by Franco and countersigned by Eugene Bashor, then president of the Local. Bashor testified that he was in the habit of countersigning the Local's checks in blank to avoid the necessity of being contacted each time a check was needed. On the stub of each of the checks here involved was a notation which, in substance, said, "to be refunded by J.F." On one of the stubs there was a notation that the amount thereof— $300.00—was repaid on July 1, 1959. The stubs of all of the other checks contained the notation "refunded by J.F. on 12/14/59." The evidence showed that three of these checks, each in the amount of $500, and one in the amount of $314.31, were issued to pay accounts charged on Franco's personal American Express Company credit card, for items not properly chargeable to Local 42. The other checks listed in the bill of particulars were also used to pay accounts not properly chargeable to the Local. The relevant statute did not limit information to loans unpaid at the end of the reporting period. So if the various withdrawals by Franco, totalling upwards of $2,300, were in fact direct, or indirect, loans to him, the report was false even if Franco had repaid the money before the end of the covered year.

In his address to us, Franco argues that the evidence was insufficient to permit submission of the issue of his guilt to the jury; he also charges the presence of other reversible errors.

We affirm.

We discuss appellant's claims as follows:

1. Sufficiency of the evidence.

It is our view that the monies taken out of the Local's bank account by Franco, especially the $1,814.31 used to pay what he owed on his American Express credit card, had to be either borrowings by him or embezzlement. It is not claimed that they were embezzlements. At the time of the withdrawals, Franco directed his secretary, who was also the Local's bookkeeper, to note on each check stub that the amount taken was to be refunded. Franco's way of attempting to avoid the government's claim that the withdrawals were loans was to say that as the only full time employee of the union, it was permissible for him to use the union's funds for what he considered appropriate uses, and that later if such disbursements were disapproved upon review by the Executive Committee, he would be required to refund the involved amounts. But the record contains nothing which would forbid a jury's conclusion that neither Franco nor the Local's Executive Committee could have looked upon the payment of Franco's personal bills as legitimate expenses of the Local. Also, the Minutes of the Executive Board Meetings contain nothing to indicate that the Board had ever given consideration to any of the items set out in the government's bill of particulars. It was Franco's contention, supported by two former officers of the Local, that the union did not look upon his withdrawals as loans. These witnesses did not, however, provide a substitute definition and their conclusional observation did not foreclose a contrary conclusion by the jury.

Familiar law teaches that in testing the sufficiency of the government's evidence to withstand a motion for directed acquittal, "the trial court, as well as the appellate tribunal, must view the evidence and the inferences that may justifiably be drawn therefrom, in the light most favorable to the government." United States v. Decker, 304 F.2d 702,

705 (6th Cir. 1962). See also Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (1942); United States v. Day, 394 F.2d 335 (6th Cir. 1968); United States v. Compton, 355 F.2d 872 (6th Cir. 1966), cert. denied, 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed.2d 548 (1966); United States v. Carter, 311 F.2d 934 (6th Cir.), cert. denied, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415 (1963). We obey such rule in our decision to affirm.

2. Evidentiary rulings.

██ Local 42 employed the firm of Aronoff and Grossberg, certified Public Accountants, to review and audit the Local's books and assist in preparation of needed reports. Among records produced by the union, was a Financial Report of Local 42 for the year ending December 31, 1959, prepared by the above accounting firm. It was marked as Government Exhibit 13. Upon cross-examination by the government, a former recording secretary of the union identified the report as "a statement of assets and liabilities of the local union." This report was part of the Local's books and records. Under the caption "Loans Receivable—December 31, 1959" was an item—"Joseph Franco $1,000." Defendant's initial objection to this exhibit was that the witness who had identified it had not prepared it, and that it could only be identified by the individual who had prepared it, who "can vouch for the accuracy of the figures." No objection was made to its relevancy and materiality. Defense counsel asked the witness whether there was anything on the report which would indicate that the $1,000 loan to Franco "was actually incurred in the fiscal year this report refers to." The witness said no. Franco made no explanation of the item. Neither did the defense call any representative of the accounting firm to testify. No objection was made to testimony that the exhibit was part of the record of the Local and had been prepared by its auditors. It was properly admitted into evidence. Irrespective of its authenticity as to amount, the report was relevant to show that the union did make what it considered a loan to Franco, whether in 1959 or otherwise. If, in fact, the $1,000 loan had been made during a period not covered by the LM–2 report, as defense counsel attempted to establish, no prejudice was visited upon defendant by its admission. What was done was a proper exercise of the trial judge's discretion. A $1,000 loan was not listed in the bill of particulars and the District Judge carefully instructed the jury that they were to consider only the loans so listed. If any rule of evidence was offended by the introduction of this exhibit, no substantial rights of defendant were affected.

Other evidentiary rulings of the District Judge are claimed to have been erroneous. Objections that would save such rulings as questions for review were not made in the trial court. We find no fault in the District Judge's accused rulings and in all events, we will not notice them as plain error, Fed.R.Crim.P. 52.

3. The Court's instructions.

At the beginning of his charge, and after reading the information which contained the charge against appellant, the District Judge said:

"It [the information] alleges that he filed a report, a statement, which was false in a material respect, and whether or not the report was material is a matter of law for the Court to determine, and I do accept that function, and determine and advise you that the information that was contained in that report was of a material nature."

This was followed by detailed explanation of the nature of the charge against Franco, the government's burden, the presumption of innocence and other usual and correct instructions. Among them was the following:

"The Information which I read to you is not evidence of the defendant's guilt. It is merely the formal manner by which the Government accuses a person of a crime in order to bring him to trial. When he is arraigned in

court, he and his attorney are furnished with copies of the Information which apprises them of what they are going to be required to meet in the subsequent trial. The jury must not be prejudiced against a defendant because an Information has been returned against him."

■ The question of whether the information contained in the LM–2 report was of a material nature was one of law. Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692, 700 (1929); United States v. Ivey, 322 F.2d 523, 529 (4th Cir. 1963). In the total context of the charge, the accused instruction was proper.

### 4. Prejudice from Exhibit 14.

During trial the government introduced Exhibit 14 which contained Minutes of meetings of the Executive Board of Local 42. It was offered to impeach appellant's claim that the checks drawn on the Local's account would be passed upon in due course by the Local's Executive Board. The exhibit disclosed that no such consideration was given by the Executive Board to Franco's withdrawals from the Local's bank account. This exhibit, with others, was given to the jury for use during deliberation without setting any limits to their investigation of its contents. No objection was made to such practice. After their deliberation had begun, the jury sent a message to the judge as follows:

"We would appreciate clarification of loan agreement as shown on page 142 of Minutes of meeting."

The jury, on its own, had come upon Minutes of a meeting of the Executive Board held on July 27, 1959. They contained the following:

"Request made by Brother Franco that Local 42 stand good for $1,500 (fifteen hundred) dollars owed to Universal Credit which will be repaid by Brother Franco before Dec. 31st.

"Present and concurring in this decision to allow Brother Franco this

courtesy was Bashor, St. Denis, Neville, Wilson, and Bellfy."

No specific reference to this entry had been made when Exhibit 14 was introduced in evidence; nor was any reference made thereto during trial. The $1,500 loan was not listed in the bill of particulars. After discussion between the Court and counsel as to how best to handle the situation, the District Judge told the jury that the $1,500 loan was not listed in the bill of particulars and then said:

"The Government, I have been informed by its counsel, has never considered this transaction with the Universal Credit Company reflected in this minute as being a matter that concerned the Government in relation to the matter we have here for consideration, and Mr. Ritchie has assured me of that fact, that this is not involved in this litigation at all."

■ No request for a better handling of the matter was made. We do not consider that defendant was unduly prejudiced by the jury's discovery of the quoted Minutes relating to the $1,500 loan; neither were his substantial rights affected. Fed.R.Crim.P. 52.

### 5. Reference to Teamsters Union.

Among other expenses charged on Franco's American Express Credit Card and paid out of the union's funds were some that, in part, related to his attendance at a convention in Florida. The recording secretary of the Local had said:

"I think this was when Joe was down in Florida, that there was a Teamsters thing or something. I don't know but I think it was the Teamsters. * * * And he stayed there part of the time and then used Local 42's credit card. And it was kind of his own vacation * * *."

■ During the course of Franco's direct testimony, he identified one charge on the credit card as being a bill from the Castaways in Miami Beach. Thereupon, the District Judge inquired whether

that motel was the one "that is owned by the Teamsters." Franco answered, "Not that I know of." No attention was paid to the foregoing at trial or in the motion for new trial. It is now claimed that the asking of the question irreparably prejudiced defendant, "In light of the current disapprobation of this Union in the public mind." This point is without merit.

6. Electronic surveillance.

The jury's verdict was returned on January 3, 1969. By letter dated January 20, 1969, the United States Department of Justice advised Honorable Thomas P. Thornton, who presided at Franco's trial, as follows:

"Please be advised that pursuant to the review of pending cases undertaken by the Department of Justice in order to ascertain the possible involvement of electronic surveillance, we have established that conversations of the defendant Joseph Franco were monitored through electronic surveillance on various occasions during 1963 and 1964."

This letter, signed by James E. Ritchie, who had conducted the prosecution of Franco, went on to say that there was no connection between the monitored conversations and "the evidence or investigative leads in the present case." The letter also advised that the transcripts or logs of the electronic surveillance were available for *in camera* inspection by the Court, and that if they were to be made available to the defendant, a protective order under Rule 16(e) of the Fed.R. Crim.P. would be sought to limit the out-of-court usage of the information contained in the transcripts.

Thereafter, the District Judge ordered that the involved logs be submitted to appellant and his attorney. Such examination by Franco and his attorney was to be made only in the Chambers of the Court or at the office of the Department of Justice in Detroit, Michigan. The order further forbade disclosure of the contents of the logs to others except by permission of the District Judge. A motion to modify the protective order was made and denied. Appellant's statement of the relevant question for review reads:

"The Court erroneously failed to either grant a new trial or a hearing to defendant on the ground that the United States had engaged in an illegal electronic surveillance and placed the defendant and his counsel under unwarranted restriction with respect to the illegally obtained data."

In denying appellant's motion for new trial, the District Judge, referring to the electronic surveillance, said:

"Government counsel, in the person of Mr. James E. Ritchie, Special Attorney, United States Department of Justice, representing the Government in the trial of this cause, informed the Court that neither he nor the agency in charge of the investigation that brought about the prosecution of the defendant, namely the Department of Labor, had any notice prior to the termination of the said trial of the existence of the transcripts of the electronic surveillance regarding the defendant. This Court has explicit faith in that representation. The transcripts of the electronic surveillance were made available to defendant and his counsel, Mr. Krislov, on April 7, 1969; at a time subsequent to this date they were made available to the Court and were examined carefully and in detail by the Court—all prior to the argument by counsel on the motion for a new trial. *These transcripts reveal nothing that had anything to do with the investigation and/or trial of this cause. The Court concludes that the electronic surveillances were in no degree prejudicial to the defendant's constitutional rights surrounding this prosecution and trial.* This Court is not conscious of any mandate of the United States Supreme Court that requires the granting of a new trial because of the lack of pre-trial disclosure of transcripts of electronic surveillances by any person and/or agency that had no prior knowledge of such transcripts." (Emphasis supplied.)

Although opportunity was given to have the transcript of the surveillance sealed and returned to this Court, it has not been made a part of the record before us. There is no challenge to the correctness of the District Judge's finding that the transcripts "reveal nothing that had anything to do with the investigation and/or trial of this cause."

 There is no rule that illegal surveillance, per se, calls for a new trial even though the disclosure of such surveillance was not made until after trial. We do not read Schipani v. United States, 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428 (1966); Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); or Kolod v. United States, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968), as announcing, as asserted by appellant, a per se rule that there must be "pretrial disclosure on pain of reversal." There is no challenge to the asserted facts that no one who had to do with preparation for and conduct of the prosecution was aware of the surveillance until after the trial and the jury's verdict. We are satisfied that the procedure directed and carried out by the District Judge was obedient to the commands of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968). It was there decided that submission of transcript of the surveillance to counsel for a defendant was to be made without waiting an *in camera* review by the District Judge. That was done here.

 Appellant also charges error upon the District Judge's refusal to allow a full hearing on whether or not the surveillance prejudiced and tainted his conviction. It is suggested that *Alderman, supra,* requires such a hearing. In considering whether the relevancy of the accused surveillance should not be left to the exclusive determination of the trial judge's *in camera* examination, the Court in *Alderman* said:

"An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances." 394 U.S. at 182, 89 S.Ct. at 971.

But here there is no suggestion that anything might be discovered by examination of any witness or witnesses which would tend to establish that Franco's conviction, or the investigation that preceded it, was in any way aided by electronic surveillance. When this issue was argued during the hearing on motion for a new trial, appellant, after study of the transcript of the surveillance by both appellant and his attorney, was unable to come forward with any evidence of possible taint. We think the District Judge handled the matter correctly. Appellant was given sufficient opportunity to show that his conviction was tainted; he was unable to do so. See *Alderman, supra,* at 183, 89 S.Ct. 961, 22 L.Ed.2d 176.

Appellant also asked that he and his counsel—contrary to the protective order—be allowed to disclose the contents of the transcripts to an attorney who was representing Franco in another criminal case. We are not advised of any relevancy of the transcript to the other criminal case. If the accused surveillance would be material to some other criminal charge against Franco, it can be made the subject of investigation there. We assume the transcript of it will be preserved.

Judgment affirmed.