**UNITED STATES of America**

v.

**Willard Eugene CUPP, a/k/a Bill Cupp, et al.**

**Crim. No. 18041.**

United States District Court,
E. D. Tennessee, N. D.

March 20, 1974.

failed to produce statements under Title 18 U.S.C. § 3500 et seq. (Jencks Act) dealing with telephone conversations between Steve McFee, the Government witness, and Jack McGivney, Special Agent for the F. B. I., when McFee was in North Carolina with defendant Dye; (3) Agent McGivney, through promises, inducements, undue pressure and corrupt means illegally and unlawfully perverted the testimony of McFee and further that McGivney concealed evidence favorable to the defendants from the prosecuting United States Attorney; (4) the indictment was obtained solely upon the hearsay testimony before the grand jury of Agent McGivney and, therefore, such indictment should be quashed. Defendants further contend that Steve McFee was under the influence of drugs while testifying on behalf of the Government.

In support of these contentions, defendants have filed with the Court a deposition of McFee which was taken under oath on September 21, 1973 in Asheville, North Carolina, together with a handwritten statement of McFee executed on September 20, 1973. Additionally, copies of alleged letters sent to McFee from Agent McGivney; the deposition of Mrs. Mary M. McFee, the witness' mother; the affidavit of Philip P. Durant, attorney for defendant Dye; a report on the polygraph examination administered McFee regarding the verification of the deposition taken in North Carolina; the affidavit of Milton A. Berman, polygraph examiner; and other exhibits have been submitted. Defendants further request an evidentiary hearing for the purpose of introducing other evidence that may bear upon the merits of the motion.

In response, the Government has submitted an issue-by-issue rebuttal to defendants' allegations together with some nineteen counteraffidavits of individuals

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for plaintiff.

John D. Lockridge, Jesse W. Butler, William C. Morrell, Charles D. Susano, Jr., Philip P. Durand, Knoxville, Tenn., Don Palmer, Maryville, Tenn., B. Rex McGee, Archie R. Carpenter, Warren R. Webster, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Defendants [1] have filed with the Court a motion pursuant to Rule 33 of the F.R. Cr.P. on the ground of newly discovered evidence. They contend that a new trial should be granted for the following reasons: (1) Evidence was introduced in this Court which was derived from illegally intercepted wire or oral communications in violation of Title 18 U.S.C. § 2515 et seq.; (2) the Government

---

1. Defendant, James Edward Dye, filed the first motion for new trial and was later joined by defendants Cupp, Ervin, Gaylon, Burnett, Hughes, Collins and Lambert. The motion is predicated upon an order of the United States Court of Appeals for the Sixth Circuit denying defendants' motion to remand without prejudice to file in the District Court motions for new trial on newly discovered evidence. (6th Cir. January 25, 1974)

who were in some way connected with the factual developments upon which the motion is based.

■ Notwithstanding the fact that the Court is faced with a purported recantation of testimony, in light of this lengthy and thorough record we conclude that no meaningful relevant facts could be further adduced at an evidentiary hearing. All facts pertinent to the question of whether defendants should prevail under Rule 33 of the F.R.Cr. P. on the ground of newly discovered evidence are before the Court. Accordingly, defendants' request for an evidentiary hearing is denied. United States v. Hoffa, 382 F.2d 856 (6th Cir. 1967); United States v. Dara, 429 F.2d 513 (5th Cir. 1970); United States v. Franco, 434 F.2d 956 (6th Cir. 1970). Therefore, we turn to the issues herein presented.

I. Was evidence derived from illegally intercepted wire or oral communications in violation of Title 18 U.S.C. § 2515 et seq. introduced in the trial court?

■ To support their contentions that illegally intercepted evidence was introduced at trial, defendants rely upon the sworn deposition of Steve McFee taken in North Carolina on September 21, 1973 (hereafter referred to as the North Carolina statement). McFee asserts therein, in the main, that Agent McGivney quoted from pieces of paper the substance of a telephone conversation between Dye and McFee when McFee was in Kokomo, Indiana. McFee further states that he was shown transcripts of telephone conversations between Dye and various other defendants, which were allegedly actual transcriptions of those conversations. Also, the witness testified in the North Carolina statement that at least on one occasion he was shown by Agent McGivney a stack of transcripts which McFee interpreted as being telephone intercepts, and that it was his impression that the F. B. I. had knowledge of circumstances that they could not have known but for

having monitored the actual conversations.

The Court's records reflect, and the Court specifically recalls, that one or more of the defendants moved to require the Government to provide any recordings or transcripts of any recordings which resulted from the use of electronic surveillance. The motion was denied without prejudice to the movants to renew should it be made to appear that the Government in fact employed wire tap or other electronic surveillance.

The Government then, as now, denies that any intercept, or the fruits of any intercept, was used other than the consensual monitoring of a telephone conversation between McFee and defendant Cupp, the use of which is presently before the Court of Appeals as a portion of the allegations of error. This position is clearly supported by the affidavits of Agents McGivney, Samson and Estill of the F. B. I. Additionally, the Government has submitted an affadavit from the Department of Justice which reflects that no electronic surveillance was employed in the case under consideration.

The Court finds that the evidence clearly shows that no wire tap or other intercept was used by the Government and that the inferences raised by McFee's North Carolina statement have no basis in fact. Accordingly, defendants' contention is without merit. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967).

II. Did the Government fail to produce a statement falling within the purview of the Jencks Act?

■ In his North Carolina statement, McFee testified that during the time he was with defendant Dye in North Carolina, he made a collect telephone call to Agent McGivney. Defendants seek an evidentiary hearing to determine first whether the call was made, secondly, whether any Jencks Act statements resulted therefrom, and finally to determine whether the failure to produce a

transcript of the contents of the call violated their rights under the Act.

The affidavits of Agents McGivney and Samson show that McFee did contact the F. B. I. on September 5, 1972 while he was apparently at his father's home in Chandler, North Carolina. McFee at that time stated that he had not seen defendant Dye for some three weeks and further gave specific information concerning Dye's knowledge of the whiskey theft. These statements were made available to the prosecuting attorney and were subsequently made available to counsel for the defendants either before trial or upon remand on the Jencks Act issue. The affiants further deny that any telephone call was received from McFee, collect or otherwise, wherein he advised the agents that he was in North Carolina with James Dye.

It is the opinion of the Court, and the Court finds, that defendants have not presented facts sufficient to support their motion on the ground that the Government failed to produce a statement falling within the purview of Title 18 U.S.C. § 3500 et seq., namely, the contents of an alleged collect call from McFee to the F. B. I. To the contrary, the record reflects that no such collect call was made. Defendants' second contention is, therefore, without merit.

III. Was the testimony of the principal Government witness illegally and unlawfully perverted and did agents of the F. B. I. conceal from the United States Attorney evidence favorable to the defendants?

Defendants contend that McFee's North Carolina statement is replete with numerous allegations of corruption and perversion of evidence induced by Agent McGivney of the F. B. I. Specific allegations of such misconduct are as follows: (1) McGivney stated to McFee that state charges against him would be dropped and there was a 100% chance of probation if John Calhoun, a probation officer in this Court, did the presentence investigation; (2) McGivney secured employment for McFee prior to trial and made arrangements with personnel in charge of the Anderson County jail for special treatment and conjugal visitation during pre-trial confinement; (3) McGivney remained in touch with McFee and on several occasions advanced money to McFee in return for testimony favorable to the Government; (4) that McFee related to Agents McGivney and Samson the facts that he and not defendant Dye was the reason behind McFee's getting his hair colored in North Carolina and that Dye had no knowledge of this until McFee returned from his trip; (5) that McGivney deliberately lied concerning whether McGivney and Samson knew about his pending Knox County sentence and that McGivney repeated this lie on the witness stand. Finally, it is asserted that McFee told his mother, Mrs. Mary M. McFee, both during trial and afterwards, that defendant Dye was not guilty of the charges against him.

In response to these allegations, the Government asserts that (1) McFee's North Carolina statement filed with the motion constitutes an untrue document; (2) the statement was brought about by the intentional scheme of McFee to perpetrate a fraud upon the Court; and (3) the evidence offered at trial by McFee was the truth then, given voluntarily and willingly, with no promises, inducements, pressures or corruption offered or received, and that such was legally given by McFee because he was involved in and had actual knowledge of the crimes charged.

To support these contentions, the Government relies upon the affidavits of Agent John F. McGivney of the F. B. I., who was in charge of the investigation; Agent Paul J. Samson, who also investigated the case; Peggy Ann Nelson, McFee's former wife; Agent Nelson Lee Gordon, who accompanied Agent McGivney to Anderson County Jail for a pre-trial interview of McFee; John M. Calhoun, United States Probation Officer; J. Fred Brehm, United States Probation Officer in charge of McFee's presentence report; L. B. Sutton, Jr.,

United States Marshal; Kenneth E. Caldwell, Sheriff of Anderson County who was responsible for the care and custody of McFee prior to trial; and Archie R. Carpenter, Esq., court-appointed counsel for McFee.

Upon careful examination of these statements it is clear that no promises, inducements, undue pressure or corrupt means were employed to unlawfully pervert the testimony of McFee. Specifically, McFee's allegations as to promises of probation, special treatment while in Anderson County Jail prior to trial, promises to obtain dismissal of outstanding state charges in return for testimony favorable to the Government, undue pressure in obtaining evidence sufficient to implicate defendant Dye, perjury on the part of Agent McGivney while testifying at trial, bribery, or any other illicit activity on the part of Government personnel to persuade McFee to testify falsely are simply not supported either by the affidavits or the record as a whole.

It should be noted that the Government further asserts that McFee's North Carolina statement was brought about by the intentional scheming of McFee in order to discredit both his trial testimony and the reputation of Agent McGivney. The affidavit of Carl William Robinson shows that both he and McFee were serving sentences at Maxwell Air Force Base, Alabama, and that they had daily contact with each other and eventually become friends.

Robinson states that from the first day McFee arrived, he began talking about the whiskey case. McFee revealed that he was depressed and scared especially about the possibility that the other defendants might take some actions of reprisal. Additionally, Robinson began to realize that McFee was planning something and was asked to contact Dye upon his (Robinson's) release from prison. McFee requested that Robinson tell Dye that, if Dye and the other defendants could raise a substantial sum of money, he (McFee) would change his testimony. Robinson related that if this

was done, McFee's apprehension would be alleviated. This request was never fulfilled by Robinson.

The affidavit further shows that McFee, on a number of occasions, remarked to Robinson that the testimony given at trial was the truth and that McFee never mentioned any improper conduct on the part of the Government during the investigation. To the contrary, McFee apparently had praise for the F. B. I. agents involved in the case, especially Agent McGivney.

The affidavits of Brenda S. Huskey, Carolyn Jones and Frank Kobosky shed further light on the Government's position that the alleged recantation as is found in McFee's North Carolina statement was part of a scheme to discredit his prior cooperation with Government investigative personnel in an attempt to restore the confidence in him of the other defendants.

If this is true, the Court condemns such actions as reprehensible. However, since the record as a whole clearly indicates that the statements of McFee which are the basis of this third ground for new trial are without factual support, the motion as to the issues contained in the third ground is overruled.

IV. Are the defendants entitled to a new trial under Rule 33 because the indictment was allegedly obtained "solely upon hearsay testimony of Special Agent McGivney"?

Defendants here assert that a new trial should be granted on the basis of newly discovered evidence because Agent McGivney, who presented the facts on behalf of the Government to the grand jury, had no direct knowledge whatsoever regarding the involvement of the defendants in the matters alleged in the indictment returned in this cause. In support of their contention, defendants rely upon United States v. Estepa, 471 F.2d 1132 (2nd Cir. 1972).

Reliance upon *Estepa,* supra, under the facts of this case, is misplaced.

See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Ramirez, 482 F.2d 807 (2nd Cir. 1973); United States v. Powers, 482 F.2d 941 (8th Cir. 1973). Defendants have failed to present evidence which would merit a new trial on the basis of newly discovered evidence. Additionally, we are of the opinion that defendants cannot now attack the validity of the indictment in light of their failure to do so under Rule 12(b)(2) of the F.R.Cr.P. Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

Accordingly, the issues asserted in ground four of the motion are without merit.

V. Was Steve McFee, the principal Government witness, under the influence of drugs during the period he was testifying?

In support of this ground, the affidavit of McFee has been submitted which states that on December 13, 1972, he took "one or two pills which he believed to be 'speed'; that these pills were blue and yellow wafer type pills with a waxy exterior." Defendants assert that this precluded proper cross-examination and contributed to McFee's evidence against them.

The affidavits of Kenneth E. Caldwell, Peggy Ann (McFee) Nelson, Carolyn Jones, Ralph E. Majors and Thomas L. Townsend show that the staetment made by McFee in his affidavit is not factually supported. During the trial, and on several occasions, McFee has denied the taking of any sort of drugs. The security officers in charge of this witness on the day of trial both state that they never observed his taking any drugs nor did he give any indication that he was under the influence of any such drugs. To the contrary, these officers stated that McFee volunteered without solicitation information concerning the case about which he was to testify, such information corroborating his trial testimony. Additionally, the Court had ample opportunity to, and did, observe McFee while on the witness stand. At no time did he appear under the influence of drugs or narcotics. It is, therefore, the Court's opinion that the defendants' motion as to issues presented in the final ground must be denied.

In summary, the Court is constrained to make several observations. First, there was much testimony given at trial both by McFee and the other witnesses as well which sufficiently supports the verdict of the jury. While it is recognized that it was primarily upon the testimony of McFee that defendant Dye was implicated, we are of the opinion that the purported recantation does not warrant a different conclusion. McFee's North Carolina statement in no way negates the fact that McFee accompanied Dye on the trip to North Carolina during which time McFee had his hair colored and purchased some glasses. Simply, McFee now states that it was at his own insistence and not Dye's that the attempted change of identity occurred.

Secondly, this purported change of testimony occurred under circumstances which are highly suspect, namely after McFee and Dye had spent some three days together in the home of McFee's mother in North Carolina. In light of the counter-affidavits of his former fellow prisoner and those other individuals with whom McFee had personal contact before, during and after the trial, the credibility of this purported recantation is seriously questioned.

The Court, as stated, observed the witness during the trial and heard all of the evidence introduced by the other witnesses who testified. We believed then, and we believe now, that his testimony reflected the true facts. His present assertion that defendant Dye was not involved and further that undue pressures were brought to bear upon him for testimony favorable to the Government cannot, under the circumstances, be accepted.

Efforts to retry the case upon a motion of this character after a protracted trial before a jury where the witnesses

were subject to extensive and thorough cross-examination are calculated to set a bad precedent as trials must end at some time. If after trial, parties can seek out those who testified and cause them to change their story, such would, if approved, weaken or possibly destroy the American system of trial by jury.

For the reasons heretofore stated, it is ordered that the motion for new trial on the basis of newly discovered evidence be, and same hereby is, denied.